Russell S. Buhite, WSBA #41257
OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
1201 Third Avenue, Suite 5150
Seattle, WA 98101
Telephone:  (206) 693-7052
Facsimile:   (206) 693-7058
Email:  russell.buhite@ogletree.com

Kristina N. Holmstrom, AZBN #023384
(admitted *pro hac vice*)
OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
Esplanade Center, Suite 800
2415 E. Camelback Road
Phoenix, AZ 85016
Telephone: (602) 778-3700
Facsimile: (602) 778-3750
Email: kristina.holmstrom@ogletree.com
*Attorneys for Defendant The Lincoln*
*National Life Insurance Company*

Honorable Judge Stanley A. Bastian

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**
**SPOKANE DIVISION**

| | |
|---|---|
| BARBARA BERG,<br><br>      Plaintiff,<br><br>    v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY<br><br>      Defendant. | Case No. 2:24-cv-00097-SAB<br><br>**LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD** |

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 1
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

Barbara Berg seeks ERISA-governed long-term disability ("LTD") benefits. She must prove her subjective complaints of right hand pain preclude her from performing the material and substantial duties of any occupation. She cannot meet this burden. Berg stopped working as a team lead for Walmart to have minor wrist surgery in 2021; she never returned. After filling out her leave paperwork for longer than he believed appropriate, her surgeon discharged her from his care because he thought she was just trying to stay out of work. Berg went on to complaint of pain with other providers despite a myriad of normal studies and different treatments. Most of Berg's providers do not support her claim. Only her current PCP, Dr. Bacon supports her claim, but he is biased. His opinion is highly restrictive and in conflict with testing performed by his own physician's assistant. What is more, he collaborated with Berg to draft the most recent disability form.

Despite the significant deficiencies in Berg's claim, Lincoln credited her subjective reports and accepted, based on independent medical reviews, that she had some limitation in the use of her right hand. This was sufficient to preclude her from returning to her occupation; Lincoln thus approved her claim for the 24 month "own occupation" period. It was not, however, sufficient to preclude Berg from performing any occupation—a more exacting definition that applied after 24 months. Four separate independent and board-certified physicians were unanimous, Berg was capable of "occasionally" using her right hand. Again, for the two reviews

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 2
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

conducted during the "own occupation" period, this supported payment; for two subsequent reviews conducted during the "any occupation" period, it did not.

Berg simply has no credible evidence that she is entitled to benefits beyond September 6, 2023—the beginning of the any occupation period. To the contrary, the evidence supporting Lincoln's decision dwarfs her lone provider's advocacy. Lincoln made the correct decision here and the Court should uphold it.

## I.    FACTUAL BACKGROUND.

### A.    The Group Policy Requires Berg To Prove Disability.

Lincoln issued a group LTD policy (the "Group Policy") to Walmart, Inc., Berg's employer. For the first 24 months of benefits, "Disabled" means a claimant cannot perform her own occupation. (LNBBPOL000015.)[1] After that, she must prove she "is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." (*Id.*) "Material and Substantial Duties" during the Any Occupation period "means responsibilities that are normally required to perform . . . any other occupation, and cannot be reasonably eliminated or modified." (LNBBPOL000018.) "Any Occupation," in turn "means any occupation that the [claimant] is or becomes reasonably fitted by training, education, experience,

---

[1] Citations to Administrative Record filed on October 15, 2024 (ECF 24.) Subsequent citations to "LBBAR0000" documents omit the prefix for brevity.

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 3
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

age, physical and mental capacity." (LNBBPOL000013.)

The burden of proof rests with Berg. Lincoln will only pay benefits if it "receives Proof that a Covered Person is Disabled" and will only continue benefits "if the Covered Person gives to Lincoln Proof of continued . . . Disability." (LNBBPOL000038.) The Group Policy further specifies that "[p]roof of continued loss . . . must be given to Lincoln within 30 days of the request for such Proof." (LNBBPOL000056.) "Lincoln reserves the right to determine if the Covered Person's Proof of loss is satisfactory." (*Id.*) Finally, "Proof" broadly includes "evidence in support of a claim for benefits and includes, but is not limited to . . . the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays ***and/or other forms of objective medical evidence*** in support of a claim for benefits." (LNBBPOL000021 (emphasis added).)

## II.  LINCOLN PAYS BERG THROUGH THE OWN OCC PERIOD.

### A.  Berg Has Wrist Surgery And Is Discharged By Her Surgeon.

Berg was a team lead for Walmart, a medium-duty occupation. She left work on March 8, 2021 to have surgery to treat De Quervain's tenosynovitis in her right hand/wrist (dominant hand). (LNBBAR000001, 19.) Her surgeon, Dr. William Page, initially restricted her from work for two weeks, but kept extending that while she underwent occupational therapy. (886, 893-94.) On June 18, 2021, Dr. Page saw Berg again and bemoaned that she primarily wanted more disability paperwork filled

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 4
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

out. Dr. Page did not believe Berg and did not mince words:

> Generally, without exception, people are able to return to work at 2 weeks after surgery. At this point she is already 14 weeks out from surgery and has not returned to work. Every contact that she has with our office is to request more time off work. . . . I think there are other factors contributing to her unwillingness to return to work. . . . Every time we see her she is requesting an increased delay in return to work. . . . [W]hile I certainly cannot argue with any subjective complaints that she has, I am unable to identify any objective anatomic abnormalities or any reason that she should not be able to use her hand normally. . . .
>
> . . . At this point she is now requesting to not return to work until August 20, 2021. My concern . . . is that when August comes she will again request more time off from work. It is my professional opinion at this juncture I cannot offer her a further delay in return to work.

(796.) Not having received the support she was seeking from Dr. Page on June 18, Berg went to urgent care on June 21, 2021 and saw Linda Leiser, FNP (with whom Berg apparently only treated once). (143-45.) Ms. Leiser submitted a certificate stating Berg could return to work with no restrictions as of July 23, 2021. (903.)

**B.    Lincoln Gives Berg The Benefit Of The Doubt And Approves Her Own Occupation Benefits.**

On July 20, 2021—with Nurse Leiser's note about to expire, Berg saw primary care PA, Marty Malone, with disability paperwork in hand. (748-49.) Berg complained that Dr. Page had "yelled at her and said that she was just trying to get out of work." (748.) According to Berg, despite occupational therapy, she still experienced pain in her right hand. Berg reported that her strength "seem[s] to wax and wane," but had decreased overall. (*Id.*) Malone noted only slight decrease in grip strength and sensation on exam. (*Id.*) Based on Berg's self-reports, Malone said Berg's history was "very suggestive of complex regional pain syndrome." (*Id.*) He

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 5
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

recommended a nerve conduction study and a pain management consult. (*Id.*) Malone also prescribed Lyrica. (*Id.*) He provided a July 22, 2021 statement that Berg could occasionally grasp/pull and lift 5 lbs with her right hand. (785.) But two months later, on September 23 (without having seen her), Malone increased his restrictions, insisting she could not lift at all with her right hand. (723.)

Berg did not see Malone again for nearly three months. On October 4, 2021, Malone said the nerve conduction study "was completely normal of both upper extremities. Her labs were also completely normal." (727.) Malone agreed to "continue with work restrictions" so Berg could consult with a vascular surgeon. (729.) He also repeated that he suspected CRPS. He did not conduct an exam because Berg "had to leave early." (*Id.*)

Lincoln considered Berg's LTD claim. As of October 15, 2021, Berg had not completed Lincoln's forms, but submitted her medical records and the various out-of-work statements from Malone, Nurse Leiser, and Dr. Page discussed above. (686-91, 721.)

Dr. David Carl Houghton (board-certified in internal medicine) provided a Clinical Review memo on October 15, 2021 noting that multiple providers had released Berg to return to work and questioning whether a primary care PA could overcome the opinion of Dr. Page, a specialist. (721.) Rather than simply deny the claim based on Dr. Page's rather damning medical opinion, Lincoln asked a third-

LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 6 Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. 1201 Third Avenue, Suite 5150 | Seattle, WA 98101 Phone: 206-693-7052 | Fax: 206-693-7058

party vendor, RRS, to coordinate an independent medical review. RRS selected Michael Lin, MD (board-certified in internal medicine). (709-16.)

Dr. Lin reviewed the records and attempted unsuccessfully to reach Malone (ultimately sending him a letter asking for information). (708-16.) Dr. Lin agreed that, given the *suspected* CRPS diagnosis, Berg was limited to occasional light use of her right hand pending further work-up. (712.) He recommended re-evaluating in two months. (*Id.*) Based on Dr. Lin's report, Lincoln approved her claim under the own occupation standard on November 6, 2021. (696-99.)

Two days after Lincoln approved the claim, Malone responded to Dr. Lin's letter. He continued to support Berg but did not provide any objective medical information to warrant that support, instead relying on Berg's self-reported "burning pain in her right hand." (693.) Indeed, Malone acknowledged Berg's "nerve conduction study . . . was negative." (*Id.*)

Lincoln continued to investigate the claim through 2022. On January 3, 2022, Berg saw Malone, who again conducted no physical examination or strength testing. (657-60.) Berg said her pain management doctor had recommended a stellate ganglion block. (659.) Although Berg said the Lyrica had "helped quite a bit," she claimed that her hand hurt even at rest. (659.) Berg had the injection on January 10 and saw Malone again on January 25, 2022 because she needed disability paperwork completed. (653-56.) She reported that the injection helped in the short-term but

LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 7
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

provided no long-term relief. Indeed, although Berg had not worked in nearly a year and had supposedly reduced her activity, she told Malone her pain was ***increasing*** and had spread to her left arm and her bilateral lower extremities. (655.) Once again, Malone failed to conduct an exam or testing during the visit. (653-56.) He completed a leave form, stating that Berg should remain out of work through July 14, 2022. (607-08.) Malone said Berg was unable to use her right hand for the demands of her job, but could work on a restricted basis. (607.) On February 10, Berg visited NPC James Foster, who conducted a completely normal cervical spine and neurologic exam. (635.) He reiterated the completely normal EMG/NCS findings and told her that "no further treatment is considered for her at this time." (636, 638.)

The SSA denied Berg's SSDI claim on 3/3/22, finding that she could perform her past, medium work of team lead. (676.)

Berg went back to Malone on March 7, 2022. (650-52.) She continued to insist that she was now having pain on her left side, too. (652.) Even Malone had to concede that "would not be consistent with complex regional pain syndrome." (*Id.*) Without examining or testing either hand, Malone simply took Berg at her word and surmised that bilateral pain could mean cervical radiculopathy (unaware that Foster had just recorded a normal cervical spine exam). (652.) Even Malone conceded the August 2021 nerve conduction study was negative, but recommended follow up testing, which Berg did not get. (*Id.*) Malone then provided a form dated April 14,

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 8
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

2022, continuing to limit Berg's use of the right hand to grasping, lifting, pushing, and pulling 5 lbs. (672.) On April 3, 2022, Berg saw Barry Bacon, MD, a PCP. (136-38.) Dr. Bacon prescribed a trial of topical capcaisin. (*Id.*)

Berg next saw Malone on April 28, 2022, focusing on right arm complaints, causing Malone to repeat his CRPS suspicions. (646-49.) Malone performed no testing of Berg's hand and referred her again to pain management. (*Id.*)

Because Foster had declined to provide further treatment, Berg saw Madison Roberts-Haley, PA at the Idaho Pain Clinic on May 18, 2022, for pain management. (620- 21.) She told Roberts-Haley that she did not want to take pain medication. (620.) Roberts-Haley ordered a radial nerve block. (*Id.*) Berg's next visit with Roberts-Haley was on June 2, 2022, during which an examination that revealed 5/5 wrist and elbow flexion/extension as well as 5/5 grip strength. (615-16.) According to Roberts-Haley, "there [were] not current physical exam findings to support [a CRPS] diagnosis" and she recommended further testing to look for other hallmarks of CRPS (which Berg never had done). (617.) She prescribed lidocaine cream and duloxetine. Berg saw Roberts-Haley's colleague, Micah Lasley, PA-C, on June 22, 2022. (612-14.) She complained that the medication was ineffective. Lasley observed a "lack of localization to a single region . . . as well as a lack of color changes and hyperesthesia." (613.) He recommended a cervical MRI "to help understand the underlying etiology of her pain." (*Id.*) A July 4, 2022 cervical MRI

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 9
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

showed mild to moderate degenerative changes in her cervical spine. (596-97.)

Berg saw Dr. Bacon's assistant Don on July 12, 2022. (581.) Berg's "C-spine shows normal range of motion deep tendon reflexes of her extremities are normal. Grip strength slightly decreased on the right." (*Id.*) Berg had the radial nerve block on July 19, 2022. (609.) She followed up with Dr. Bacon on July 21. (586-89.) She insisted none of her medications had worked, btu she was able to run 3 miles per day. (586.) Dr. Bacon wanted to move forward with imaging. (587.)

Before the imaging could occur, Berg saw Jonathan Lippman PA-C at Idaho Pain Clinic on August 4, 2022. (569.) She reported that the nerve block had only reduced her pain by 50% for two days. (*Id.*) Lippman suggested neck injections and a spinal cord stimulator. (*Id.*) Berg did not want to do anything until after having another MRI and seeing Dr. Bacon again. (*Id.*) In the meantime, Berg underwent physical therapy from August 3 through August 31, 2022. She did not report any sustained improvement. (511-36.) Berg also had an MRI and x-ray in August 2022, showing no abnormalities in her right forearm. (593, 595.) Despite the normal imaging, Dr. Bacon baldly described Berg as "currently disabled" on September 2, 2022. (588-90.) He vaguely described her grip strength as "decreased." (589.) In November and December 2002, Berg continued treatment with Idaho Pain Clinic, including an epidural steroid injection on December 13, 2022. (416-28.)

Lincoln continued to pay Berg "own occupation" benefits throughout 2022.

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 10
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

In December 2022, Lincoln asked a different third-party vendor, Genex, to facilitate another review, which Dr. Solomon Rojhani (board-certified in physical medicine and rehabilitation ("PM&R")) completed on December 5, 2022. (498-506.) Dr. Rojhani reviewed Berg's medical records and attempted to reach her providers unsuccessfully. He determined that Berg was limited due to self-reported pain, even though her workup "ha[d] been generally unremarkable." (504.) Dr. Rojhani agreed with Dr. Lin's opinion that Berg could work full-time, but was limited to "occasional" use of her right hand, including occasionally lifting up to 5 lbs. (which was also consistent with Malone's forms). Lincoln continued to pay Berg's claim.

### C.    Lincoln Finds Berg's "Any Occupation" Proof Lacking.

As the "any occupation" period approached, Berg completed a December 28, 2022 Activity Questionnaire. (474-77.) When asked about her exercise regimen, Berg did not disclose she ran 3 miles per day, instead claiming she tried to walk daily. (476.) Berg had another epidural steroid injection on January 31, 2023, which she claimed provided her 10% relief. (454, 439.) Lippman started her on Low Dose Naltrexone on March 21, 2023. (444-45.) On April 11, 2023, Berg reported to Lippman that "she experienced 'minimal pain' with her initial" dose of medication. (449.) He refilled her prescription and noted that in three months they would discuss a spinal cord stimulator. (*Id.*)

After collecting information, Lincoln asked a third outside vendor, MLS, to

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 11
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

coordinate another review. MLS referred the assignment to Dr. William Barreto (board-certified in PM&R) on June 19, 2023. (286-95.) He attempted to reach Berg's providers. (286-88.) Dr. Barreto recounted Berg's medical records. (288-91.) Although a cervical MRI revealed some degenerative changes, various diagnostic tests did not reveal abnormalities. (*Id.*) Nevertheless, Dr. Barreto credited Berg's subjective complaints and agreed Berg could only push/pull/lift/carry 10 lbs occasionally and 5 lbs frequently, and only occasionally perform fine and gross manipulation with her right hand. (292.) Rebecca Bach, M.Ed., C.R.C., performed a transferrable skills analysis, revealing two occupations Berg could perform with those restrictions: customer service representative and information clerk. (277-280.)

Lincoln informed Berg by letter dated July 14, 2023 that she would not be eligible for benefits beyond September 6, 2023 because she failed to prove disability from any occupation. (270-76.) The letter recounted the Group Policy provisions as well as relevant evidence and informed Berg about her appeal rights. (*Id.*)

In the meantime, an Administrative Law Judge ("ALJ") approved Berg's SSDI claim on July 5, 2023 (though Lincoln did not have a copy when it made its decision). (152-61.) The ALJ determined Berg had residual functional capacity for light-duty work except she could only use her right hand for fingering/feeling up to 10% of any workday. (156-58.) That finding was based on Dr. Bacon's opinions and Berg's self-reports. It does not appear that the ALJ had any of the LTD reviews. (*Id.*)

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 12
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

### D.    Berg Appeals, But Fails To Support "Any Occupation" Disability.

Berg timely appealed on August 25, 2023, emailing a June 16, 2023 statement from Dr. Bacon stating that she could use her right upper extremity at 20% capacity, could use her right hand for only 20 minutes at a time before taking a 3-hour break, and could use her right hand 0% of a work day. (231, 256-57.) He did not provide any updated records or any evidence of functional testing supporting his position. Indeed, the records already in the file show that on July 12, 2022, he observed only mildly diminished grip strength and Roberts-Haley determined that her grip strength was 5/5 on June 2, 2022.[2] (581, 616.)

Lincoln had vendor ECN coordinate another medical records review, this one completed by Dr. Annie Layno-Moses (board-certified in PM&R). (165-73.) Dr. Layno-Moses tried unsuccessfully to reach Dr. Bacon. (170.) After reviewing Berg's long history of normal exams/testing alongside increasing pain complaints, Dr. Layno-Moses, like the three reviewers before her, ultimately credited Berg's pain complaints. (170-72.) She concluded that Berg could lift/carry/push/pull up to 20 lbs occasionally in both upper extremities. On her right side, she could reach, manipulate, and grasp "occasionally." (172.) Dr. Layno-Moses followed up with a

[2] As described below, the May 31, 2023 exam by Dr. Bacon's PA belied his opinion. (110.) But Berg did not provide that record with her initial appeal.

LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 13
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

letter to Dr. Bacon, to which he did not respond. (175.)

Jason Miller, M.Ed., CRC, ABVE/F, performed a vocational assessment on September 12, 2023. (177-78.) He determined that there were three suitable occupations Berg could perform: surveillance system monitor, gate guard, and information clerk. (178.) Lincoln provided the medical records review and the vocational assessment to Berg for review. (163.) In response, Berg submitted a complete print-out of Dr. Bacon's records, which showed treatment back to June 2021. (105-47.) Notably, on June 21, 2021 (after her March 2021 surgery), Dr. Bacon's assistant, Rebecca, tested Berg's grip strength and noted it to be 4/5 in her right hand. (145.) The additional records also included office visit notes from October 28, 2022, January 13, 2023, and May 31, 2023 that Berg had not previously provided. (118-20, 113-15, 108-10.) Dr. Bacon did not conduct any strength or range of motion testing at the October 28, 2022 or January 13, 2023 visits, merely parroting Berg's complaints that "any activity seems to bother her. Flares up after any activity, gripping, motion, any pressure causes pain" and that she is "unable to use the right hand." (118-20, 113-15.)

On May 31, 2023 however, Berg saw Dr. Bacon's PA-C, Kevin Sullivan, because she needed disability paperwork filled out (this would ultimately be the June 16, 2023 statement from Dr. Bacon). (108.) Sullivan conducted a physical exam that belies Berg's complaints and Dr. Bacon's reliance on them. It was resoundingly

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 14
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

normal other than 4/5 strength in the right thumb and wrist (flexion) (110.) Berg had lost no strength June 2021 despite a self-reported increase in symptoms. Dr. Bacon reviewed Sullivan's note the same day and commented that he "may need to do a phone visit" with Berg to complete the disability form. (110.) Indeed, a brief June 16, 2023 note states that Dr. Bacon "complete[d] forms with patient." (108.) The severe restrictions reported on his June 16, 2023 form (0% use of the right hand) appear to be based on Berg's direction and fundamentally incompatible with Sullivan's exam. How can Berg retain 4/5 strength and be unable to use her hand for any portion of a work day? Berg did not see Dr. Bacon again. (105-08.) Dr. Layno-Moses reviewed the new records, but did not see any basis to change her opinion. (88-91.) Lincoln provided the addendum to Berg, who did not further rebut it. (83-84.) Lincoln upheld its decision by letter dated November 3, 2023. (67-73.)

## III. LINCOLN CORRECTLY DETERMINED BERG DID NOT PROVE ANY OCCUPATION DISABILITY.

In this *de novo* review, the Court considers the administrative record and determines whether Lincoln correctly determined that Berg failed to prove her claim. *Opeta v. Nw. Airlines Pension Plan for Contract Emps*., 484 F.3d 1211, 1217 (9th Cir. 2007) In doing so, this Court is tasked with "evaluat[ing] the persuasiveness of conflicting [written] testimony and decid[ing] which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 15
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

### A.    Lincoln Had A Duty Under ERISA To Apply Plan Terms.

The Group Policy required Berg to furnish Lincoln with ongoing "Proof of continued loss." Lincoln had a duty to the plan not to pay benefits unless and until Berg furnished such proof; Lincoln had no burden to disprove Berg's claim. *See Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1296 (9th Cir. 2010) (plaintiff must proving entitlement to benefits); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 63 F. Supp. 2d 1145, 1155 (C.D. Cal. 1999), aff'd, 370 F.3d 869 (9th Cir. 2004) (no "burden to . . . 'disprove' an alleged disability").

In assessing whether Berg met her burden, Lincoln had a contractual and regulatory duty to provide a "full and fair review" and to adhere to the terms of the plan including, importantly, strictly enforcing the Group Policy's "proof" requirements. 29 C.F.R. §§ 2560.503-1(h)(2); (b)(5)(requiring procedures designed to ensure compliance with governing plan documents); *Heimeshoff v. Hartford Life & Accid. Ins. Co.*, 571 U.S. 99, 108 (2013). This duty does not "favor payment over non-payment," but instead requires an "impartial account of the interests of all beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996). Because "the Plan is at the center of ERISA," Lincoln must pay only proven claims, per the plan terms. *Conkright v. Frommert*, 559 U.S. 506, 520 (2010) (administrators "have a duty to all beneficiaries to . . . prevent . . . windfalls for particular employees"); *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 589 (8th Cir.1999) (administrator cannot

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 16
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

"grant[] claims to unqualified claimants").

In conducting a *de novo* review, the Court will have the same responsibility to strictly enforce the relevant plan provisions. *Heimeshoff*, 571 U.S. at 108. Enforcing plan terms as written is the "the linchpin of a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place." *Id*. at 108. Berg fell woefully short of proving she was disabled from any occupation.

## B.    Berg Didn't Prove Less Than "Occasional" Use Of Her Hand.

This case turns on whether Berg can "occasionally" use her right hand, as there is no dispute that she otherwise has good functionality. Nor has Berg refuted the vocational findings that suitable occupations exist if she is able to use her right hand "occasionally." Four independent and board-certified physicians,  retained by different vendors reviewed the entire record and are unanimous: Berg can use her right hand "occasionally." (88-91, 165-73, 286-95, 498-504, 708-16.)

In the face of four unanimous and unbiased experts, Berg supplies a single statement from Dr. Bacon. A statement in which Berg collaborated and that is undermined by Sullivan's testing. Indeed, in the six times he saw Berg, Dr. Bacon only performed strength testing once (in September 2022) relaying just that it was "decreased." (112, 118, 121, 125, 132, 136.) When Dr. Bacon's staff performed strength testing, they noted that her grip strength was only "slightly" decreased.

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 17
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

(135, 143, 110.) It is telling that none of Berg's other physicians provided current support for her claim. Indeed, the most recent support other than Dr. Bacon was from Malone in April 2022 and he said she was only limited to grasping and carrying five pounds with her right hand. (671-72.) Berg's other providers have been silent or actively refuted her claim: (796, 903, 638, 609-21, 568-70, 416-55.)

Dr. Bacon cannot carry Berg's her burden of proving disability from any occupation as of September 6, 2023. It is not surprising that Dr. Bacon would uncritically accept Berg's subjective beliefs about her functionality. "Most of the time, physicians accept at face value what patients tell them about their symptoms" *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir .2004). Such "acceptance [is] more or less required of treating physicians, but by no means required of the administrator" or a Court on de novo review. *Maniatty v. UnumProvident Corp.*, 218 F.Supp.2d 500, 504 (S.D.N.Y.2002), aff'd, 62 Fed. Appx. 413 (2d Cir.2003), cert. denied, 540 U.S. 966, 124 S.Ct. 431, 157 L.Ed.2d 310 (2003); *see also Seleine v. Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009) aff'd, 409 F. App'x 99 (9th Cir. 2010); *Alvis v. AT&T Integrated Disability Serv. Ctr.*, No. 2:07-CV-00984, 2009 WL 1026030, at *17 (E.D. Cal. Apr. 15, 2009) aff'd, 377 F. App'x 673 (9th Cir. 2010). Indeed, the Supreme Court has recognized "a treating physician, in a close case, may favor a finding of 'disabled'." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, (2003) (ERISA does not require

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 18
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

administrators to defer to treating physicians). Accordingly, Dr. Bacon's uncritical advocacy does not overcome the lack of evidence in the file.

Nor can Berg's self-reports carry the day; her uncorroborated word is not adequate proof. *See Seleine v. Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009) aff'd, 409 F. App'x 99 (9th Cir. 2010) (courts "may require "objective evidence of an inability to function in the workplace"); *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1191 (C.D. Cal. 2008) ("Plaintiff claims that his subjective complaints should be accepted at face value. The rule is to the contrary."); *Maniatty v. UnumProvident Corp.*, 218 F. Supp. 2d 500, 503 (S.D.N.Y. 2002), aff'd, 62 Fed. App'x 413 (2d Cir. 2003) ("very concept of proof connotes some degree of objectivity."); *Jackson v. Wilson, Sonsini, Goodrich & Rosati Long Term Disability Plan*, 2010 U.S. Dist. LEXIS 88930, *14 (N.D. Cal. 2010). Lincoln appropriately considered Berg's self-reported complaints, but realized they were wholly untethered from the actual medical records.

The SSDI award is not persuasive because the SSA simply deferred to Dr. Bacon and Berg's self-reports, which neither Lincoln nor this Court are bound to do. The ALJ hearing occurred on June 9, 2022, well over a year before the relevant time period here and before Sullivan's largely normal May 31, 2023 physical exam undermining Dr. Bacon's opinion. "Disability decisions of the Social Security Administration do not bind [courts] in resolving ERISA claims," particularly where,

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 19
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

as here, the SSA relies on "evidence that does not speak to the timeframe at hand." *Tranbarger v. Lincoln Life & Annuity Co.*, 68 F.4th 311 (2023); *see also Autran v. Procter & Gamble*, 27 F.4th 405, 407 (6th Cir. 2022) (administrator relied upon evidence created after the SSA decision); *Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 889 (8th Cir. 2002) (same).

Beyond the medical evidence discrepancy, the SSA's vocational analysis diverges from the Group Policy's requirements here. The Ninth Circuit recently discounted the importance of an SSDI award to an ERISA LTD case because the SSA's requirement for disability, "—unlike the Plan's—does not include work [the claimant] could become qualified for given reasonable training, but rather only work that he is already qualified to perform." *Walker v. AT&T Benefit Plan*, 2023 WL 3451684 (9th Cir. May 11, 2023). The Group Policy requires Lincoln and the Court to consider what occupations Berg is or becomes reasonably fitted to perform, not just occupations she is already qualified to perform. The SSDI award does not meet Berg's burden of proof for her LTD claim.

### C. The Unanimous Opinions of the Independent Medical Reviewers Are Entitled To More Weight than Dr. Bacon's Opinion.

As stated, Lincoln obtained four independent medical reviews (using different vendors) from four board-certified physicians: Drs. Lin, Rojhani, Baretto, and Layno-Moses. Courts routinely recognize the right of administrators to rely upon

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 20
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

independent medical records reviews. *See, e.g., Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010) (administrators can rely on opinions of reviewing physicians); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005) ("nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination.") This is particularly true here where the independent reviewers: (1) had the entire (then-current) medical record, unlike Berg's various providers whose treatment was truncated; (2) reviewed the medical record over years (Dr. Lin reviewed the file before Dr. Bacon even started providing his support); (3) expressly credited Berg's subjective complaints despite normal diagnostic testing; (4) unanimously agreed that Berg had restrictions and limitations; and (5) unanimously agreed that Berg could use her right hand "occasionally." And, as previously noted, Berg's *own* treating providers (Dr. Page, Leiser) have been silent or actively refuted her claim.

Dr. Bacon, on the other hand, based his advocacy on collaboration with his patient. The independent medical reviewers are far more persuasive than Dr. Bacon.

## IV.  **CONCLUSION.**

Berg failed to meet her burden to prove, through objective evidence, that she is disabled from any occupation. She is not entitled to benefits.

Respectfully submitted this 15th day of October, 2024.

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 21
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s/ Kristina N. Holmstrom*
    Russell S. Buhite, WSBA #41257
    1201 Third Avenue, Suite 5150
    Seattle, WA 98101
    Telephone: (206) 693-7052
    Facsimile: (206) 693-7058
    Email: russell.buhite@ogletree.com

    Kristina N. Holmstrom, AZBN #023384
    Esplanade III, Suite 800
    2415 E. Camelback Road
    Phoenix, AZ 85016
    Telephone: (602) 778-3700
    Facsimile: (602) 778-3750
    Email: kristina.holmstrom@ogletree.com


*Attorneys for Defendant The Lincoln National Life Insurance Company*

LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 22
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October 2024, I served the foregoing LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD via the method(s) below upon the following parties:

Melton L. Crawford, WSBA #22930
LAW OFFICE OF MEL CRAWFORD
3244 NE 103rd Street
Seattle, WA 98125-7821
Telephone: (206) 694-1614
Facsimile: (206) 905-2342
Email: melcrawford@melcrawfordlaw.com

Robert J. Rosati, SBN #112006
(admitted *pro hac vice*)
THE ERISA LAW CENTER
6485 North Palm Avenue, Suite 105
Fresno, CA 93704-1072
Telephone: (559) 478-4119
Facsimile: (559) 478-5939
Email: robert@erisalg.com

*Attorneys for Plaintiff Barbara Berg*

☒    by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

☐    by **mailing** a true and correct copy to the last known address of each person listed above. It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the United States Postal Service in Seattle, Washington.

☐    by **e-mailing** a true and correct copy to the last known email address of each person listed above.

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 23
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

SIGNED THIS 15th day of October, 2024 at Sherman, Connecticut.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: */s/ Rose S. Ramsey*
   Rose S. Ramsey, Practice Assistant
   rosie.ramsey@ogletree.com

LINCOLN'S OPENING BRIEF ON THE
ADMINISTRATIVE RECORD - 24
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058