Robert J. Rosati, CA SBN #112006
Email: robert@erisalg.com
6485 N. Palm Ave., Ste. 105
Fresno, CA 93704
Telephone: (559) 478-4119
Facsimile: (559) 478-5939
*Admitted Pro Hac Vice*

Mel Crawford, WSBA #: 22930
Law Office of Mel Crawford
3244 N. E. 103rd St.
Seattle, WA  95125-7821
Email: melcrawford@melcrawfordlaw.com
T:  (206) 694-1614
F:  (206) 905-2342

Attorneys for Plaintiff: *Barbara Berg*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA BERG, <br><br> Plaintiff, <br><br> v. <br><br> THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No.  2:24-cv-97-SAB <br><br> **PLAINTIFF'S MOTION FOR JUDGMENT** <br><br><br> **JUDGE:**      Stanley A. Bastian |

///

///

///

///

///

///

///

///

///

---

**PLAINTIFF'S MOTION FOR JUDGMENT**

# TABLES OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     REVIEW IS *DE NOVO*................................................................................. 2

III.    THE ADMINISTRATIVE HISTORY OF BERG'S CLAIM............................................ 3

IV.     BERG'S TREATMENT RECORDS ................................................................... 8

V.      BERG'S EVIDENCE IS CREDIBLE AND PERSUASIVE .......................................... 12

VI.     LINCOLN'S EVIDENCE IS WEAK AND NOT PERSUASIVE................................... 15

        A.      Lincoln Failed to Examine Berg .......................................................... 16

        B.      Lincoln "Cherry-Picked" the Evidence it Provided to its Reviewers.................... 16

        C.      Lincoln's Doctors Do Not Explain Their Reasoning ............................................ 17

        D.      Lincoln Unreasonably Considered Pain ................................................... 18

        E.      Lincoln Never Suggested that Berg Provide Any Other Types of Evidence......... 18

        F.      Lincoln's Medical Opinions are Not Persuasive........................................ 19

        G.      Lincoln's Vocational Evidence is Not Credible................................................... 20

VII.    CONCLUSION................................................................................................ 20

**PLAINTIFF'S MOTION FOR JUDGMENT**

# TABLES OF AUTHORITIES

## CASES

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) ............................................ 2

*Armani v. Northwestern Mutual Life Insurance Company*, 840 F. 3d 1159 (9th Cir. 2016) .......... 2

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) .................................................. 14

*Bombassei v. Lincoln National Ins. Co.*, 2023 WL 3605968 (E.D. Mich, May 23, 2023)........... 18

*Bradford v. Life Insurance Company of North America*, 49 F. Supp. 3d 789

   (E.D. Wash. 2014) ............................................................................................................ 3, 13

*Collier v. Lincoln Life Assurance Co. of Boston*, 53 F. 4th 1180 (9th Cir. 2022).......................... 3

*Conti v. The Lincoln National Life Insurance Co.*, 2024 WL 1316386

   (D. Minn, March 21, 2024) ................................................................................................... 19

*DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440 (6th Cir. 2009) ............................ 15

*Elliot v. Fortis Benefit Insurance Company*, 357 F. 3d 1138 (9th Cir. 2005)............................. 20

*Grosz-Solomon v. Paul Revere Life Ins. Co.,* 237 F. 3d 1154 (9th Cir. 2001)............................ 20

*Holmgren v. Sun Life and Health Insurance Company*, 354 F. Supp. 3d 1018

   (N.D. Cal. 2018) .................................................................................................................... 19

*Holmstrom v. Metropolitan Life Insurance Company*, 615 F.3d 758 (7th Cir. 2010).......13, 18, 19

*Kearney v. Standard Insurance Co.*, 175 F. 3d 1084 (9th Cir. 1999) ........................................... 2

*Maher v. Aetna Life Insurance Company*, 186 F. Supp. 3d 1117 (W.D. Wash 2016) ................. 18

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ........................................................ 17

*Miller v. Lincoln Life Ins. Co.*, 2024 WL 1183676  (D. W. Vir. March 19, 2024)...................... 17

*Montour v. Hartford Life & Accident Insurance Company*, 588 F.3d 623

   (9th Cir. 2009) .................................................................................................................. 14 - 16

*Muniz v. Amec Constr. Mgmt.*, 623 F.3d 1290 (9th Cir. 2010)..................................................... 2

*Pannebecker v. Liberty Life Assurance Company of Boston*, 542 F.3d 1213

   (9th Cir. 2008) ........................................................................................................................ 2

*Pifer v. Lincoln Life Assurance Co. of Boston*, 2023 WL 520111

   (M.D.N.C. August 14, 2023)................................................................................................. 17

**PLAINTIFF'S MOTION FOR JUDGMENT**

*Reetz v. Hartford Life & Accident Insurance Company*, 294 F. Supp. 3d 1068

    (W.D. Wash. 2018) ..................................................................................................... 15

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008)............. 18

*Salomaa v. Honda Long Term Disability Plan,* 642 F. 3d 666 (9th Cir. 2011) .......... 15, 16, 18, 19

*Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F. 3d 727 (9th Cir. 2006)......... 2

*Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F. 3d 356 (6th Cir. 2022) .................... 16

*Stratton v. Life Insurance Company of North America*, 589 F. Supp. 3d 1145

    (S.D. Cal. 2022) ....................................................................................................... 18

*Witney v. United of Omaha Life Ins. Co*., 2022 WL 4483179,

    (W.D. Wash. September 27, 2022) ....................................................................................... 14

*Young v. United of Omaha Life Insurance Company*, 165 F. Supp. 3d 984

    (E.D. Wash 2016) ....................................................................................................... 13

**<u>STATUTES</u>**

42 U.S.C. § 1382c(a)(3)(A)............................................................................................................. 15

42 U.S.C. § 1382c(a)(3)(B)............................................................................................................. 15

**PLAINTIFF'S MOTION FOR JUDGMENT**

## I.  **INTRODUCTION**

This is an ERISA-governed long term disability (LTD) benefits claim. Barbara Berg was formerly employed by Walmart from 2003 through 2022, most recently as a team leader.  In March, 2021, Berg had surgery on her dominant right hand and thereafter developed Complex Regional Pain Syndrome ("CRPS").  She received benefits from The Lincoln National Life Insurance Company ("Lincoln") for two years.

Lincoln required Berg to apply for Social Security Disability Income ("SSDI") benefits.  On July 5, 2023, the Social Security Administration issued a Notice of Decision awarding SSDI benefits to Berg.  By letter dated July 14, 2023, Lincoln notified Berg that her LTD benefits would end as of September 6, 2023, but invited her to appeal; that decision did not address the Social Security Administration decision because Lincoln did not then know of it.  Berg later submitted the SSDI Notice of Decision as part of her timely appeal of Lincoln's LTD benefits termination decision.  Lincoln denied Berg's appeal of the termination of her LTD benefits.  Although Lincoln had the SSA ALJ's Notice of Decision, it did not provide it to its reviewing doctor or appeal vocational reviewer.

The question presented by the policy is whether as a result of injury or sickness, Berg is unable to perform the material and substantial duties of any occupation.  Review is *de novo*.  Lincoln and its reviewing doctors do not dispute that Berg has chronic pain as a result of CRPS.  They just dispute that Berg is therefore disabled from performing "any occupation."  Berg's evidence is credible and persuasive.  Berg's medical records and her doctor's opinions demonstrate that she is disabled due to her chronic pain condition.  That conclusion is corroborated by the detailed decision of the Social Security Administrative Law Judge.

By contrast, Lincoln's evidence is not credible or persuasive because Lincoln "cherry picked" the evidence it provided its reviewers, did not examine or test Berg, does not dispute or question Berg's complaints or the nature and magnitude of her

- 1 -

**PLAINTIFF'S MOTION FOR JUDGMENT**

pain, and it and its reviewers do not explain why they do not credit Berg's credible evidence of disability or credibly justify their own conclusions.

## II.    REVIEW IS *DE NOVO*

The parties agree that review is *de novo*. Complaint ¶ 37; Answer ¶ 37. Trial of an ERISA benefits claim is a bench trial on the administrative record that the administrator had before it.  *Kearney v. Standard Insurance Co.*, 175 F. 3d 1084, 1094-195 (9th Cir. 1999) (*en banc*).  A court employing *de novo* review in an ERISA case "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). "[T]he court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010).  Berg bears the burden of showing, by a preponderance of the evidence, that she was disabled under the terms of the plan during the claim period.  *Armani v. Northwestern Mutual Life Insurance Company*, 840 F. 3d 1159, 1162-1163 (9th Cir. 2016).  When conducting a *de novo* review, this Court has "a responsibility under the ERISA framework to undertake an independent and thorough inspection of an administrator's decision."  *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F. 3d 727, 728 (9th Cir. 2006).

This Court must begin its evaluation of a benefit denial, "with the governing plan documents." *Pannebecker v. Liberty Life Assurance Company of Boston*, 542 F.3d 1213, 1218 (9th Cir. 2008).  Lincoln "was required to benchmark [Berg's] eligibility for benefits against the [policy] definitions."  *Id*.  Lincoln's arguments and defenses are limited to those rationales it presented administratively in its July 14, 2023, benefit termination letter, AR 270-276, and its November 3, 2023, appeal denial letter, AR 67-74. *Collier v. Lincoln Life Assurance Co. of Boston*, 53 F. 4th

**PLAINTIFF'S MOTION FOR JUDGMENT**

1180, 1186-1188 (9th Cir. 2022).

This Court must weigh conflicting evidence and resolve disputed factual issues; Rule 52(a) requires the Court to find the facts specifically and state its conclusions of law separately. *Bradford v. Life Insurance Company of North America*, 49 F. Supp. 3d 789, 791 (E.D. Wash. 2014).

### III.  <u>THE ADMINISTRATIVE HISTORY OF BERG'S CLAIM</u>

1.      On August 19, 2021, Berg submitted forms to Lincoln explaining that she could sit, stand, and walk as needed, but could only drive for 30 minutes before her wrists goes numb; and does not do activities because "they require the use of my hands."  AR 950.  (Citations to the Administrative Record omit extra letters and numbers.)  She is right hand dominant.  AR 951.  She spends no time on the computer; and needs assistance with various activities.  AR 951.  She explained that she is prevented from working because "I had surgery on my right wrist on March 8, 2021, my wrist and arm are still going numb-burning aching with use.  Doctor has me on 5-lb. weight restriction.  I am right-handed."  AR 952.

2.      On November 1, 2021, Lincoln obtained a review of Berg's medical records by Dr. Michael Lin.  AR 709-716.  He noted the primary diagnosis is right DeQuervain's tenosynovitis. AR 711. Complex regional pain syndrome is a suspected diagnosis.  AR 712.  He opined that Berg, "should be limited to occasional light use of right hand."  AR 713.

3.      By letter dated November 6, 2021, Lincoln approved Berg's claim for long term disability benefits, noting that she became disabled on March 8, 2021, that the LTD policy has a 26-week elimination period, and therefore her LTD benefits began on September 6, 2021.   AR 696-699.

4.      On December 5, 2022, Lincoln obtained a "Peer Review" from Solomon Rojhani, M.D., Board Certified in Physical Medicine and Rehabilitation, Pain Medicine.  AR 498-506.  He explained, "the claimant has a supported level of

**PLAINTIFF'S MOTION FOR JUDGMENT**

impairment that translates into restrictions and limitations from March 8, 2021, to - ongoing." AR 502. He wrote that Berg had surgery on March 8, 2021, "however, postoperatively, she consistently has reported pain, weakness, and tingling over her right wrist." AR 503. He concluded she could work full time. AR 504.

5. Berg submitted an "Activities Questionnaire" and other documents to Lincoln on January 12, 2023. AR 474-484. She explained she was employed by Walmart since 2003, AR 481, most recently as a "team lead." AR 480. She explained: she used to play video games with her grandkids but now is unable to, AR 475; she needs help for various activities, AR 475; she cannot work because "I cannot grasp with my right hand, movement of my right wrist causes burning, aching, stiffness, and stinging. Bending my fingers also causes a burning sensation that sometimes goes up my right arm. Any movement of my fingers or wrist causes the aching, stiffness and burning and it progresses throughout the day." AR 476. Her daily routine includes, "If I am having a decent day, I may try to pick up the house a little with my left hand and usually take a nap around 2 p.m. ish." AR 476.

6. On June 16, 2023, Berg's physician, Dr. Barry Bacon, M.D. answered questionnaires submitted to him by Lincoln and wrote: Berg is permanently disabled; he is treating Berg for DeQuervain's tenosynovitis and complex regional pain syndrome; he has been trained to distinguish legitimate symptoms from malingering; Berg's description of her limitations is consistent with his expectations and is supported based upon his examinations and treatment history; the maximum amount of time that Berg should be on her feet in a eight hour workday is four hours; Berg's symptoms impact her right hand and forearm; she cannot lift with her right hand or grasp, or do fine manipulation with her right hand. He imposed limitations on her use of her right hand and fingers of 20 minutes of continuous use and then she would need a 180-minute break. He explained those limitations as due to permanent disability - - pain in the right hand and forearm. He noted that Berg would miss work more than 4 days per month (the highest option available on the

- 4 -

**PLAINTIFF'S MOTION FOR JUDGMENT**

form) due to severe pain.  He wrote that Berg had tried various treatments to mitigate her symptoms.  AR 256-257.

7.      Lincoln obtained a medical review dated June 19, 2023, by Dr. William Barreto, M.D, Board Certified in Physical Medicine and Rehabilitation and Pain Medicine.  AR 286-295.  He referenced no records more recent than April 11, 2022, and did not note or comment upon Dr. Bacon's June 16, 2023, submission.  Dr. Barreto concluded that Berg could work but explained, "there is documentation to support impairment and therefore restrictions and limitations from 03/08/2021 to ongoing."  He opined that Berg could work full-time within her restrictions and limitations, but that those restrictions and limitations would be permanent.  AR 292. He noted "the claimant's complaints of pain and limitation have been consistent, durable, supported by numerous reports, and there have been no signs of malingering or symptom embellishment.  Additionally, imaging are consistent with restrictions and limitations described below."  AR 292.

8.      On July 5, 2023, Lincoln obtained a "transferable skills analysis" based on Dr. Barreto's records review from its employee, Rebecca Bach, M.Ed., C.R.C. She concluded that Berg could perform sedentary office jobs such as Customer Service Representative Supervisor or Information Clerk.  AR 277-283.

9.      On July 5, 2023, the Social Security Administration issued a Notice of Decision - - Fully Favorable" to Berg concerning her claim for Social Security Disability Benefits.  AR 152-161.

10.     By letter dated July 14, 2023.  AR 270-276, Lincoln terminated Berg's benefits effective September 6, 2023, reasoning that the medical documentation and review identified that she could perform the occupations specified by Ms. Bach and therefore, "we found you no longer meet the criteria for LTD benefits."  AR 273. The letter invited her to appeal.  AR 274-275. The letter summarized Dr. Barreto's report and Ms. Bach's TSA but made no reference to the SSA ALJ's decision, which Lincoln did not yet have.

- 5 -

**PLAINTIFF'S MOTION FOR JUDGMENT**

11.    The Social Security Administration sent a "Notice of Award" to Berg dated July 15, 2023, explaining it found her disabled under its rules on March 8, 2021, and her SSA benefits would begin thereafter.  AR 263-267.

12.    Pursuant to Lincoln claim note 101, on July 25, 2023, Lincoln was notified by its vendor that Berg had been awarded Social Security disability benefits effective September 20, 2021.  AR 6 and 250-255.

13.    By letter dated July 27, 2023, Lincoln demanded payment of an overpayment of $28,852.85, created by Berg's receipt of retroactive SSDI benefits.  AR 236-237.

14.    Berg repaid the full amount of the overpayment.  In overpayment Claim Note 6, dated August 23, 2023, Lincoln noted " op [overpayment] recovered in full closed referral."   AR 5.

15.    By email on August 25, 2023, Berg wrote "I am writing … to appeal the decision to stop my LTD benefits.  Per the email I sent you on 7/21/2023, Judge John W. Rolph and Diana L. Kizer, a vocational expert, declared that I'm unable to work, therefore I'm appealing the decision to stop my benefits."  AR 231.

16.    Lincoln prepared "referral questions" on August 30, 2023, transmitting newly received records, and posing seven questions, including "Describe how any supported level of impairment translates into restrictions and limitations from 09/06/2023 to present and going forward …"  and "Do the medical records reviewed support the R&Ls, if any, that were recommended by treating providers for the time frames in question?"  AR 219-222, quotes at AR 220, Nos. 3 and 4.  In response, Lincoln obtained a records review by Dr. Annie Layno-Moses, M.D., Board Certified in Physical Medicine and Rehabilitation and Pain Medicine, dated September 8, 2023.  AR 165-173.  Her report summarizes voluminous medical records, but does not mention Social Security Administration ALJ Rolph's, July 5, 2023, Notice of Decision.  Dr. Layno-Moses identified Berg's impairing diagnoses as: radial styloid tenosynovitis, cervical radiculopathy, pain in the right hand,

- 6 -

paresthesia of skin, polyneuropathy, unspecified, and complex regional pain syndrome II.  AR 170.  In response to Question No. 3, she answered "there is a level of impairment that translates into restrictions and limitations from 09/06/2023 to present and ongoing."  In response to Question No. 4, regarding the evidence supporting any restrictions and limitations or that were recommended by treating providers for the timeframes in question, she answered, "N/A.  There are no R&Ls that were recommended by treating providers for the timeframes in question."  AR 172.  The "timeframes in question" appear to be September 6, 2023, to the present, as specified in Question No. 3. AR 170.  Dr. Layno-Moses's report summarizes Dr. Bacon's June 16, 2023, Questionnaire responses, AR 169, but omitted that Dr. Bacon was asked to explain why his limitations were appropriate and that he wrote, "due to permanent disabling pain in her right hand/forearm."  AR 284.  Lincoln provided no medical records from the "timeframe in question" for Dr. Layno-Moses to review because, of course, there were none.

17.    Lincoln obtained a vocational review, dated September 12, 2023, from Jason E. Miller.  Mr. Miller's Memorandum does not reference the SSA ALJ's decision or Ms. Kizer's testimony summarized therein.  AR 177-180.  He relied solely on the peer review report by Dr. Layno-Moses.  See AR 177.  He concluded Berg could work as a Surveillance System Monitor, Gate Guard, and Information Clerk.  AR 178.

18.    By letter dated September 13, 2023, Lincoln invited Berg to comment on Dr. Layno-Moses's report and Mr. Miller's vocational memorandum.   AR 163-173; see also AR 184-192.

19.    By email dated September 18, 2023, AR 149, Berg sent Lincoln: (1) Dr. Bacon's June 16, 2023, reports, AR 150-151; and (2) the Notice of Decision – Fully Favorable from the Social Security Administration.  AR 152-161.

20.    By email dated September 27, 2023, Berg wrote that she noticed that a letter she was sent indicated Lincoln tried calling Dr. Bacon's office on September 5

- 7 -

**PLAINTIFF'S MOTION FOR JUDGMENT**

and September 6, with no response. "I called Dr. Bacon's office today and they tried returning the calls on 9/7, 9/8, both times leaving a message to try setting up a peer-to-peer call." AR 148.

21.    Lincoln obtained an addendum, dated October 10, 2023, addressing additional medical records reviewed by Dr. Layno-Moses. That review also did not include the SSA ALJ's decision. AR 92-95. Dr. Layno-Moses stated that "the additional medical information does not alter my prior opinion stated in that report." AR 94.

22.    By letter dated October 11, 2023, Lincoln sent Berg Dr. Layno-Moses' Addendum and invited her to comment. AR 86-91.

23.    By letter dated November 3, 2023, AR 67-74, Lincoln denied Berg's appeal explaining that while Dr. Layno-Moses concluded that she had complaints of right upper extremity pain, numbness and tingling following her surgery on 03/08/2021, AR 69, "the information does not contain significant physical exam findings, diagnostic test results or other forms of medical documentation supporting your impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering you unable to perform the duties of your occupation after that date." AR 69.

## IV.  BERG'S TREATMENT RECORDS

Berg was diagnosed with right first dorsal compartment stenosing tenosynovitis and had surgery performed by Dr. William Page on March 8, 2021. AR 777 – 778 (Operative Report). Berg had an occupational therapy evaluation on March 23, 2021. AR 775 – 776. She was having some paresthesia in the superficial radial nerve distribution and was told this was normal and was discharged to a home exercise program. AR 776. Berg saw Dr. Page's PA-C Jackson on April 7, 2021. At that point, she was concerned about some hypersensitivity around the incision site as well as some tingling along the superficial nerve distribution of the right

hand.  Otherwise, she felt she was doing pretty well.  AR 774.

Berg saw her primary care provider, Marty P. Malone, PA-C (Colville Community Health Center), on April 27, 2021.  She reported "a stabbing, throbbing pain with certain movements," and persistent pain over the radial and extending into the forearm and upper arm.  Malone wrote: "history is very suggestive of complex regional pain syndrome."  AR 748.

Berg saw Dr. Page's PA-C, on May 6, 2021, with concern about persistent pain in her right wrist 8 weeks following surgery.  "She describes a sharp, burning pain episodically along the superficial radial nerve distribution of the right hand and wrist.  There is also sensitivity along this distribution to light touch.  Tenderness over the scar as well."  AR 773.

Berg had six sessions of occupational therapy between May 24, 2021, and June 7, 2021.  AR 847-867.

Berg last saw Dr. Page, on June 18, 2021.  He wrote,

"Barbara has no objective abnormalities on exam. . . Unfortunately, she continues to complain of debilitating dysfunction.  She states that she has a burning sensation on the dorsal aspect of her thumb, index, and long finger that gets worse with use…. she states today that with use of her hand she is unable to do the normal demands of her job at Walmart and that Walmart will not allow her to return to work until she is "100%".  Most importantly, she states that she cannot return to work.  Her primary concern, again, today, seems to be delaying her return to work" . . . I told her that while I certainly cannot argue with any subjective complaints that she has, I am unable to identify any objective anatomic abnormalities or any reason that she should not be able to use her hand normally. "It is my professional opinion at this juncture that I cannot offer her a further delay in return to work. . .  She has agreed in return to not request any further return to work delay from me or this office."  AR 739.

Berg saw Dr. Barry Bacon on June 21, 2021, AR 143 – 147. Dr. Bacon reported that Berg presented with complaints of hand and wrist pain, stated that she had had right wrist de Quervain node surgery, began noticing pain and tingling in right wrist and thumb two days before the cast removal, surgeon's partner diagnosed her with nerve entrapment and referred her to occupational therapy, but the surgeon refused to continue to treat her stating, "she did not have nerve entrapment" and

"just wanted a reason to get out of work".  Berg stated that:

- The pain in her right wrist, thumb and index is getting worse over time;

- Described the pain as burning, like "bees stinging", 8-9/10 all the time;

- Endorsed numbness, tingling, and sensory changes in right thumb and index finger;

- Described stiffness in right wrist and decreased grip strength;

- Explained that at times the pain travels up forearm into elbow and shoulder; and

- Various over the counter remedies have been unsuccessful.

Berg saw Dr. Brice J. Barker for a new patient visit on July 19, 2021.  She presented with pain and dysesthesia over right dorsal wrist in the radial styloid.  She explained that the pain she had prior to her surgery had resolved "But that now she has sharp burning pain in her wrist that radiates up into her arm… she is frustrated because she feels that she cannot do her regular job at work because of the pain in her wrist."  AR 762.

On April 3, 2022, Berg returned to Dr. Bacon and explained that she "keeps getting worse, she has tingling, burning, aching, muscles tightening, burning to the shoulder, with use of her hand."  "She has tried OT, surgery, pain management, she had a nerve blocker in her neck, at her wit's end. . . numbness tingling and burning sensation like bees stinging her." AR 136.

On July 21, 2022, Berg reported to Dr. Bacon "She has had a lot of symptoms, stiffness, pain, burning, numbness, constant, worse with activity, increased with wrist movement, weakness, present with gripping, pain is intense to the point of interfering with basic activities."  She tried many medications without help. "She runs 3 miles a day.  She feels better by doing this."  AR 132.

On September 2, 2022, Berg reported to Dr. Bacon, "ongoing pain with use of the right wrist. She reports weakness as well. Unable to use the extensor tendons and wrist tendons of the right upper extremity without significant pain and weakness,

- 10 -

PLAINTIFF'S MOTION FOR JUDGMENT

unable to open jars, limited lifting, grasping, driving, writing is painful and often worsens the symptoms." AR 125

On September 29, 2022, Berg reported to Dr. Bacon, "She has a lot of pain in her right hand, grasping, making the bed, holding a book causes pain… feels like her arm is in a thistle bush, aching present." "She reports dizziness, spinning sensation sometimes with standing, not blacking out." AR 121.

On October 28, 2022, Berg reported to Dr. Bacon, "any activity seems to bother her. flares up after any activity. gripping, motion, any pressure causes pain. seems to affect her fingers as well. and her wrist." AR 118

On January 13, 2023, Dr. Bacon wrote: "She describes the symptoms as electric shock. . . She feels a lot of frustration that she is not better." AR 113.

On May 31, 2023, Berg reported to PA-C, Kevin Sullivan, "She states she has been on gabapentin, Lyrica, and opioids without relief." "She states that essentially, she is still unable to use her right hand due to the pain." AR 108.

Berg had 11 visits at Colville Physical Therapy between August 3, 2022, and October 5, 2022. AR 300 – 333. Assessment/Diagnosis (08/03/2022): "Her hand and forearm are hypersensitive . . . She has shown the following impairments: decreased range of motion, decreased strength, hypomobility, decreased functional tolerance for activities, decreased quality of life." AR 300.

Berg had an x-ray of her right forearm. AR 595. She had an MRI of the cervical spine. AR 596.

Berg had office visits or pain treatment modalities at the Idaho Pain Clinic (AR 416-612), as follows:

- May 18, 2022. AR 545 – 546: "She currently experiences pain in . . . right arm with radiating symptoms into her left arm." AR 545.

- June 2, 2022. AR 547 – 550: "The pain is present constantly. The quality of the pain is described as aching, burning, dull pins and needles, stabbing. The pain radiates into her right arm… Patient notes improvement with nothing. The

- 11 -

pain is aggravated by lifting and movement."  AR 547.

- She got no benefit from Duloxetine, as reported on June 22, 2022.  See AR 613.

- A right radial nerve block on June 28, 2022.  AR 609 – 611.

- A surgical injection on July 19, 2022.  AR 571 – 572.

- At an office visit on August 4, 2022.  AR 568 – 570.  She explained that the radial nerve block provided a couple days of relief.  AR 568.

- She reported chronic constant pain on November 8, 2022.  AR 416.

- She got another injection on December 13, 2022.  AR 420.

- She had an office visit on January 4, 2023.  AR 424.  The January 4, 2023, injection provided five days of 60% relief.  See AR 430.

- She had an epidural steroid injection on January 31, 2023. AR 424.

- She had an office visit on February 21, 2023.  AR 438.  At a follow up to the injection, which provided 10% relief, see AR 439, she explained she failed other medicinal therapies which, "make her nauseated or higher than a kite."  See AR 440.

- At office visits on March 21, 2023, AR 443, and April 4, 2023, AR 447, LDN therapy for chronic pain was explained to her and she agreed to try it for three months.  LDN is Low Dose Naltrexone for chronic pain.

## V.  BERG'S EVIDENCE IS CREDIBLE AND PERSUASIVE

Berg's evidence, set forth in Part III, ¶¶ 1, 3, 5, 6, 9, and 19, and in Part IV, persuasively and credibly demonstrates that Berg is unable to perform the material and substantial duties of any occupation as a result of any injury and therefore is entitled to LTD benefits.

First, Berg's descriptions of the nature and magnitude of her pain are detailed, consistent with the medical evidence, credible, and not questioned by Lincoln or its doctors.  Second, Dr. Bascon's opinions that Berg is disabled are well-reasoned and

- 12 -

well explained.  Third, the conclusion that Berg is disabled is corroborated by the Social Security Administration's decision.  As discussed below, other courts have found such evidence to be dispositive in similar cases.

In *Holmstrom v. Metropolitan Life Insurance Company*, 615 F.3d 758 (7th Cir. 2010), the court explained that "[T]his case illustrates the difficult problems presented by claims for disability insurance by people with serious and painful conditions that do not have objective measurable symptoms."  *Id*. at 761. Holmstrom, like Berg, developed a painful nerve condition in her right arm; surgery failed to remedy the condition; and Holmstrom was diagnosed with CRPS.  *Id*. at 761.  MetLife paid Holmstrom own occupation benefits, denied any occupation benefits, and prevailed at trial.  The Seventh Circuit reversed the decision, explaining, "there is ample corroboration that her pain has been genuinely disabling. We also find that MetLife's selective use of evidence. . . show that MetLife's decision to terminate benefits was arbitrary and capricious."  *Id*. at 761.

In *Bradford v. Life Insurance Company of North America, supra*, 49. F. Supp. 3d 789, when considering similar facts, Judge Rice fully credited the plaintiff's treating doctor's opinions that the plaintiff was disabled by pain, reasoning that the treating doctor "is by far and away the person most qualified to render an opinion about plaintiff's functional abilities.  His opinions . . . are well-supported by the factual record . . .  and plaintiff was fully credible…"  *Id*. at 796-797.

In *Young v. United of Omaha Life Insurance Company*, 165 F. Supp. 3d 984 (E.D. Wash 2016), the plaintiff's claim of disability was based on frequent headaches and neck and shoulder pain.  *Id.* at 987.  The insurance company acknowledged the headaches and cervical pain but asserted restrictions and limitations of no work were not corroborated by the documentation in the file.  *Id*. at 989-990.  The court found that that conclusion "is directly contrary to the findings" of the treating doctor and the IME doctor, *Id.* at 990, and rejected the insurance company's analysis and awarded benefits.  *Id*. at 991.

**PLAINTIFF'S MOTION FOR JUDGMENT**

*See also Witney v. United of Omaha Life Ins. Co.*, 2022 WL 4483179, *11 (W.D. Wash. September 27, 2022), which concluded that the observations, diagnoses, and medical advice contained in medical records "are reliable, contemporaneous evidence of plaintiff's mental health disability. "Plan administrators… may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). This Court should credit and give great weight to the opinions of Dr. Bacon because his records and opinions are reliable evidence of disability.

Dr. Bacon's opinion is corroborated by the Social Security ALJ Decision. That decision corroborates Berg's allegations of disabling pain and significantly reduced right-handed dexterity. In the SSA hearing on June 23, 2023, AR 155-161, Berg stated, "she cannot work because any use of her right hand, including flexing her wrist or using her fingers results in burning pain that can extend al the way up to her shoulder." AR 156-157. Berg "estimated that she can use her right hand for about 20 minutes before pain begins to become noticeable" and must stop her activity. "Sometimes she can return to her activity after about 20 minutes, sometimes not at all. . . . She does attend her grandson's ball games. Her significant other does most of the household chores . . ." AR 159. Berg explained "[r]ecently some success has been noted[d] with low dose Naltrexone (LDN)." AR 158. The ALJ held: "[T]he record relating to the claimant's pain and other symptoms is quite compelling." AR 157. Her "allegations are consistent with and supported by the medical evidence." AR 157. Diana L. Kizer, an impartial vocational expert, AR 155, testified "there are no jobs in the national economy that [Berg] could perform" given her age, education, work experience and residual functional capacity." AR 160.

SSA rulings are highly relevant to an ERISA disability determination. *Montour v. Hartford Life & Accident Insurance Company*, 588 F.3d 623, 635-636 (9th Cir. 2009). The SSDI award is independent "evidence of disability," that should

- 14 -

PLAINTIFF'S MOTION FOR JUDGMENT

be considered. *Salomaa v. Honda Long Term Disability Plan,* 642 F. 3d 666, 679 (9th Cir. 2011). Though the "process of comparing and contrasting the two opposing disability determinations [will be] more difficult," without the SSA's missing "medical determination," the uniform federal standards that apply to Social Security claims are well known. *Montour v. Hartford Life & Acc. Ins. Co. supra*, 588 F.3d at 636; *see also*, *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 446 (6th Cir. 2009): to qualify for benefits under the Social Security Act, Berg must be unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The SSA necessarily determined that Berg is incapable of performing not only her own occupation, but also "any other substantial gainful work that exists in the national economy regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for him, or whether she would be hired if [s]he applied for work " - - a much more stringent standard than that under The Policy. See, 42 U.S.C. § 1382c(a)(3)(B); *see also Montour v. Hartford Life & Acc. Ins. Co., supra*, 588 F. 3d at 636.

Furthermore, there is no evidence of improvement in Berg's condition since Lincoln previously found her to be disabled. Because Lincoln awarded Berg LTD benefits for two years, one would expect the evidence to show an improvement in her condition; this is a logical inference that the Court may make based on a specific set of facts. *Reetz v. Hartford Life & Accident Insurance Company*, 294 F. Supp. 3d 1068, 1079-1080 (W.D. Wash. 2018).

In conclusion, Berg's evidence of disability is comprehensive, consistent, persuasive, and credible and should be fully credited.

## VI. LINCOLN'S EVIDENCE IS WEAK AND NOT PERSUASIVE

Lincoln's evidence is weak, flawed and not persuasive: (1) Lincoln did not

- 15 -

examine Berg.  (2) Lincoln "cherry-picked" the evidence it provided to its reviewers.  (3) Lincoln's medical reviewers do not explain facts inconsistent with their conclusions.  (4) Lincoln and its medical reviewers do not dispute. (a) Berg's diagnoses; (b) that CRPS causes significant pain; or (c) that Berg's complaints of substantial pain are credible.  (5) Lincoln's reviewers do not explain why they disagree with Dr. Bacon's conclusions that Berg cannot work.  (6) Lincoln's medical reviewers' opinions are inconsistent with the medical evidence and are unsupported by credible reasoning.  Finally, Lincoln's vocational evidence is not credible because it is based on Lincoln's weak and flawed medical opinions and Mr. Miller's report fails to address Ms. Kizer's opinions, which are summarized in the ALJ's decision.

A.    Lincoln Failed to Examine Berg

The Policy provides Lincoln with the right to examine claimants.  AR 54.  But Lincoln chose not to do so.  Lincoln's failure to examine Berg "raises questions about the thoroughness and accuracy of the benefits determination." *Montour, supra*, 588 F. 3d at 634.  "An insurance company may choose to avoid an independent medical examination because of the risk that the physicians it employs may conclude that the claimant is entitled to benefits." *Salomaa v. Honda Long Term Disability Plan, supra*, 642 F. 3d at 676.

B.    Lincoln "Cherry-Picked" the Evidence it Provided to its Reviewers

Lincoln plainly "cherry-picked" the evidence it provided to its medical reviewers and its vocational reviewer by withholding from them documentation that supports Berg's claim and which undermines their conclusions.  *Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F. 3d 356, 362 (6th Cir. 2022).  Most significantly, neither Dr. Layno-Moses, nor vocational reviewer Miller, were provided SSA ALJ Rolph's Notice of Decision, AR 152-161, evidence which directly undermines their conclusions.

Lincoln's medical reviewers' opinions are not persuasive because they did

- 16 -

not meaningfully address (or address at all) significant evidence.  Failing to address favorable evidence and withholding it from its experts appears to be a recurrent Lincoln practice.  *See, e.g., Miller v. Lincoln Life Ins. Co.*, 2024 WL 1183676, ** 17-18 (D. W. Vir. March 19, 2024): Lincoln's final decision failed to discuss evidence supporting the claim and Lincoln failed to provide evidence supporting Miller's claim to its reviewing doctors.  *See also Pifer v. Lincoln Life Assurance Co. of Boston*, 2023 WL 520111 (M.D.N.C. August 14, 2023), *11: Lincoln failed to provide relevant records to its reviewing personnel and relied upon their opinions even though it lacked relevant information.  In *Pifer*, the plaintiff produced the only type of evidence a claimant in her situation can procure, her own description of severity of her subjective symptoms, doing so with a journal.  Here, Berg did so with her personal statements and SSA testimony.

Although Lincoln noted the SSA award in its November 3, 2023, letter, AR 67-73, its only meaningful use of that award was to further its own financial interests.  See Part III, Facts, ¶¶ 11-14.  As in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 114, 128 S. Ct. 2343 (2008), Lincoln "encouraged [Berg] to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so. . ., and then ignored the agency's findings," events which "suggested procedural unreasonableness" and undermine the insurer's position because its "seemingly inconsistent positions were both financially advantageous."  Lincoln's failure to provide ALJ Rolph's Notice of Decision to Dr. Layno-Moses or Mr. Miller not only undermines their credibility and the persuasiveness of their opinions because they do not address strong evidence contrary to their conclusions, it also demonstrates the weakness of Lincon's decision because it demonstrates that Lincoln could only justify its decision by "sandbagging" its experts so that they were ignorant of important facts and could therefore provide opinions without reference to those facts.

C.    Lincoln's Doctors Do Not Explain Their Reasoning

**PLAINTIFF'S MOTION FOR JUDGMENT**

Here, while Lincoln [and its reviewing doctors] <u>noted</u> Berg's personal statements and Dr. Bacon's opinion, they made no meaningful effort to explain <u>why</u> that evidence was inadequate to support benefits or why their medical opinions supporting work capacity are more persuasive than Dr. Bacon's opinion opposing work capacity. The reports and opinions relied upon by Lincoln lack any in-depth analysis of Berg's CRPS, do not meaningfully discuss CRPS, and do not explain how or why Berg could work full-time despite her pain symptoms. Consequently, that evidence is not persuasive. *See Bombassei v. Lincoln National Ins. Co.*, 2023 WL 3605968, *8 (E.D. Mich, May 23, 2023).

D.    <u>Lincoln Unreasonably Considered Pain</u>

Lincoln's explanation in its November 3, 2023, letter that there are no physical exam findings, diagnostic test results, etc. of Berg's impairments and symptoms, AR 69, is inherently unreasonable. Severe CRPS is not inconsistent with "normal" test results, which mostly rule out <u>other</u> conditions. *Holmstrom v. Metropolitan Life Ins. Co., supra*, 615 F. 3d at 768-769. It is inherently unreasonable to require a claimant to prove her condition since "no definitive objective test" exists for "subjectively painful conditions like CRPS" or its severity. *Id.*

Pain "is a completely subjective phenomenon and cannot be objectively verified or measured." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 873 (9th Cir. 2008). A disability insurer cannot condition coverage on proof of objective indicators "when the condition is recognized yet no such proof is possible. *Salomaa v. Honda Long Term Disability Plan, supra*, 642 F. 3d at 678. It is unreasonable to reject a claim based on self-reported evidence where the plan administrator has no basis for believing that it is unreliable and where the plan does not limit proof to objective evidence. *Stratton v. Life Insurance Company of North America*, 589 F. Supp. 3d 1145, 1174 (S.D. Cal. 2022); *Maher v. Aetna Life Insurance Company*, 186 F. Supp. 3d 1117, 1128-1129 (W.D. Wash 2016).

E.    <u>Lincoln Never Suggested that Berg Provide Any Other Types of Evidence</u>

- 18 -

**PLAINTIFF'S MOTION FOR JUDGMENT**

Lincoln not only chose not to examine or test Berg, it declined to tell her that it wanted some evidence above and beyond the type of evidence she had been submitting for two years.  In its July 14, 2023, letter, AR 270-276, Lincoln invited Berg to provide "new information," AR 273, telling her to include "the reasons you feel the decision to discontinue LTD coverage is incorrect" and to provide medical records and any Social Security Decision "that you feel will support your claim."  AR 274-275.  Such conduct "was not reasonable and weighs against denying benefits. . ."  Lincoln impermissibly converted [Berg's] disability process into a "guessing game."  Lincoln did not specify any specific evidence Berg should provide, but then denied her claim because objective testing did not demonstrate her condition.  *Conti v. The Lincoln National Life Insurance Co.*, 2024 WL 1316386, *9 (D. Minn, March 21, 2024); *see also Salomaa, supra*, 642 F. 3d at 679.

The doctors who examined and treated Berg determined that she suffers from severe pain and reduced right-handed dexterity, which precludes her from working.  No doctor questioned the legitimacy of Berg's pain complaints.  Berg's complaints of pain and the fact that her pain is disabling are wholly credible.  *See, e.g., Holmgren v. Sun Life and Health Insurance Company*, 354 F. Supp. 3d 1018, 1028-1029 (N.D. Cal. 2018).  For two years Lincoln credited Berg's statements and the opinions of her doctors that she could not work.  While Lincoln was not required to send Berg to an IME or FCE, it could have done so if it required that type of evidence.

F.    Lincoln's Medical Opinions are Not Persuasive

Lincoln's doctors' opinions are not persuasive because they do not explain why they disagree with Dr. Bacon's 6-16-23, opinions.  Lincoln disregarded and failed to credit obviously reliable evidence - - the opinions of Dr. Bacon and of ALJ Rolph.  *See Conti, supra*: Conti was disabled due to extreme pain in multiple areas of her body, neuropathy, muscle weakness and loss of strength.  *Id.* at *1.  She was diagnosed with Fibromyalgia and chronic pain syndrome.  *Id.* at *2.  She was paid

- 19 -

**PLAINTIFF'S MOTION FOR JUDGMENT**

benefits until the end of the own occupational benefits period. *Id*. at ** 5-6. An expert's opinion is only as good as the reasons for those opinions; an expert's *ipse dixit* without explanation and contrary to the evidence relied upon is entitled to no weight.

G.      Lincoln's Vocational Evidence is Not Credible

Lincoln's vocational expert, Miller, only reviewed Dr. Layno-Moses' report, he did not note Dr. Bacon's opinions or review or any of Berg's medical records, or Berg's personal statements, or ALJ Rolph's Decision, and did not address at all, let alone explain why he disagreed with impartial vocational consultant Diana C. Kizer's opinions summarized in ALJ Rolph's Decision. Mr. Miller's opinion is not reliable, credible, or persuasive: it is based on a medical review which is not credible or persuasive and which is not consistent with the medical evidence, and it does not address at all, let alone meaningfully address or attempt to controvert credible, independent contrary evidence.

## VII.  CONCLUSION

The evidence demonstrates that Berg was and is disabled and is entitled to the benefits she seeks. Therefore, the Court: (1) should order payment of past due benefits and reinstatement of future LTD benefits, *Grosz-Solomon v. Paul Revere Life Ins. Co.,* 237 F. 3d 1154, 1163 (9th Cir. 2001); (2) award Berg prejudgment interest on past due benefits; and (3) award Berg attorney fees and costs incurred in this action, *Elliot v. Fortis Benefit Insurance Company*, 357 F. 3d 1138, 1148 (9th Cir. 2005), pursuant to a timely filed motion.

Respectfully submitted this 15th day of October, 2024.

*/s/ Mel Crawford*
MEL CRAWFORD

*/s/ Robert J. Rosati*
ROBERT J. ROSATI

*Attorneys for Plaintiff,*
*BARBARA BERG*

- 20 -

**PLAINTIFF'S MOTION FOR JUDGMENT**