Russell S. Buhite, WSBA #41257
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
1201 Third Avenue, Suite 5150
Seattle, WA 98101
Telephone:  (206) 693-7052
Facsimile:   (206) 693-7058
Email:  russell.buhite@ogletree.com

Kristina N. Holmstrom, AZBN #023384
*Admitted Pro Hac Vice*
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
Esplanade Center, Suite 800
2415 E. Camelback Road
Phoenix, AZ 85016
Telephone: (602) 778-3700
Facsimile: (602) 778-3750
Email: kristina.holmstrom@ogletree.com
*Attorneys for Defendant The Lincoln
National Life Insurance Company*

Honorable Judge Stanley A. Bastian

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## SPOKANE DIVISION

BARBARA BERG,

      Plaintiff,

      v.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY

      Defendant.

Case No. 2:24-cv-00097-SAB

**LINCOLN'S RESPONSE TO
PLAINTIFF'S MOTION FOR
JUDGMENT**

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 1
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

Case 2:24-cv-00097-SAB    ECF No. 32    filed 11/05/24    PageID.1234    Page 2 of 24

This case turns on whether Plaintiff Barbara Berg can use her right hand "occasionally" or not at all. Specifically, Berg seeks ERISA-governed long-term disability ("LTD") benefits and to obtain them, she must prove through objective medical evidence that she is unable to perform "any occupation." The unrebutted vocational evidence confirmed multiple occupations Berg can perform with occasional use of her right hand. As such, she must prove that she cannot use her right hand, not even occasionally, during a workday. The evidence in the file falls short of that heavy burden. Berg's examinations were normal other than slightly diminished grip strength in her right hand. Four independent reviewing physicians retained through different vendors uniformly credited Berg's pain complaints to opine it was reasonable to limit her right hand usage to "occasional." Berg's only "evidence" is the advocacy from one of her (many) providers and that "evidence" contravenes an examination conducted by his own staff.

Rather than adducing evidence to meet her burden, Berg relies on soundbites from factually-distinct cases, mischaracterizes the significance of her SSDI award, and conjures procedural complaints that are irrelevant to this Court's *de novo* review, but, more importantly, unfounded. Berg has not proven her claim.

## I.      THE OBJECTIVE MEDICAL EVIDENCE DEMONSTRATES BERG IS NOT DISABLED FROM ANY OCCUPATION.

Berg tries to wedge her case into the framework of cases in which other LTD

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 2
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

claimants have successfully relied on subjective reports, parroting general quips to the exclusion of the actual facts in this case. When comparing *this* record with those cases, it is clear she has not met her burden of proof.

### A. The Group Policy Requires Objective Medical Evidence Of The Inability to Perform Any Occupation.

To obtain LTD benefits under the Group Policy, Berg must submit:

- *Proof*, defined as "evidence in support of a claim for benefits and includes, but is not limited to . . . standard diagnosis, chart notes, lab findings, test results, x-rays *and/or other forms of objective medical evidence* in support of a claim for benefits"

*that she is disabled from*

- *Any Occupation*, defined as "any occupation that the [claimant] is *or becomes reasonably fitted* by training, education, experience, age, physical and mental capacity."

(LNBBPOL000013, 21 (emphasis added).)

Both Lincoln and the Court are bound to strictly enforce those terms. (Dkt. 25, at 16.) Berg cannot satisfy ERISA and the Group Policy by showing that she has a medical condition and subjective complaints. "[R]ather, she must show that these conditions are disabling" because they "prevent[] her from performing [any occupation]." *Kris B. v. Life Ins. Co. of N. Am.*, 2024 WL 4446282, at *7–8 (N.D. Cal. Sept. 12, 2024) (claimant with degenerative changes in her back and knees did not prove by a preponderance of the evidence that her subjective pain from those conditions functionally impaired her). A claimant may "appear[] sincere in her belief

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 3
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

that she cannot work . . . due to her conditions," but she is not entitled to benefits where "she has not submitted the medical evidence necessary to support her position." *Id.* at *11.

**B.    Berg's Claim Rests On Flimsy Medical Evidence.**

The medical evidence here shows that Berg bounced around to multiple providers, most of whom failed to provide restrictions and limitations for the relevant time period (beyond September 6, 2023). These providers include:

- Dr. Page, who accused her of simply not wanting to work and adamantly refused to provide her ongoing support. (796.)

- FNP Leiser, who said Berg could return to work in July 2021. (903.)

- Pain management clinic Northwest Spine & Pain, which, in February 2022, determined they could offer her no further treatment with no provider ever supporting restrictions and limitations. (638.)

- Idaho Pain Clinic, which Berg visited multiple times with no provider ever imposing restrictions or limitations. (609-21, 568-70, 416-55.)

From June 2021 through May 2023, Berg visited multiple providers a number of times. Physical examinations were not consistently performed, and actual testing is even more rare. Exhibit A to this Brief is a summary of all the physical exam findings and testing Berg underwent from June 2021 through May 2023 and it is telling. Berg had a normal nerve conduction study, a normal forearm x-ray, and a

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 4
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

normal forearm MRI. (*Id.*) While she had some degenerative findings on a July 2, 2022 cervical spine MRI, she had normal range of motion testing in her cervical spine on February 10, 2022 and July 12, 2022, indicating that those changes were asymptomatic. (*Id.*) When numerically measured, the grip strength in Berg's right hand was normal or only slightly diminished: 4/5 on 6/21/21, 4+/5 on 7/20/21, 5/5 on 2/10/22, 5/5 on 6/2/22, 4/5 on 5/31/23. (*Id.*)[1]

Dr. Bacon is the only provider who purports to provide restrictions and limitations for Berg and he only performed four physical exams between July 21, 2022 and January 13, 2023. (*Id.*) His records do not demonstrate that he performed any formal testing; nor did he attempt to quantify any portions of those four exams to put them in useful context. Rather, his descriptions are narrative and mild:

- 7/21/22: "Tender right wrist and pain with flexion and extension of the right thumb."

---

[1] Colville PT did indicate that they measured Berg's "Grip/Pinch" to be 4 lbs on the right, but that is a distinct outlier compared with the other measurements; neither the methodology or validity are clear. (513.) Such "evaluations" are only persuasive when they "rest on objectivity and meaningful validity performance testing." *Paff v. Lincoln Life Assurance Co. of Boston*, 2024 WL 4368976, at *5 (E.D. Va. Oct. 1, 2024). The remaining measurements were only slightly diminished at that visit.

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 5
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

- 9/2/22: "grip is decreased. rom is intact. tenderness is minimal. pain with active movement of the thumb."

- 10/28/22: "Tenderness over her wrist. she is able to use the thumb and fingers for some activities."

- 1/13/23: "weakness right wrist and forearm. tenderness over the forearm."

(Ex. A.) The most recent examination and strength testing were done on May 31, 2023 by PA-C Sullivan in Dr. Bacon's office and they revealed largely normal findings and functionality, with strength on her right side mildly diminished to 4/5. (*Id.*) Dr. Bacon disregarded Sullivan's thorough testing in favor of calling Berg to collaborate on the disability form on which he opined she could ***never*** use her right hand. (Dkt. 25, at 15-16.)

## C.    Berg's Cases Establish Why She Cannot Win On This Record.

Berg relies on a number of other cases in which claimants alleging disabilities based on subjective symptoms have been awarded benefits: *Holmstrom v. Metropolitan Life Insurance Company*, 615 F.3d 758 (7th Cir. 2010); *Bradford v. Life Insurance Company of North America,* 49 F. Supp. 3d 789 (E.D. Wash. 2014); *Young v. United of Omaha Life Insurance Company*, 165 F. Supp. 3d 984 (E.D. Wash 2016); *Witney v. United of Omaha Life Ins. Co.*, 2022 WL 4483179, *11 (W.D. Wash. September 27, 2022). In its Opening Brief, Lincoln explained how subjective

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 6
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

complaints and conclusory treating physician advocacy is not sufficient proof. (Dkt. 25, at 18-19.) Berg's cases both confirm those principles and demonstrate why Berg is not entitled to benefits here.

As an initial matter, none of those opinions discuss a plan term expressly requiring objective medical evidence like we have in this Group Policy. Particularly where such a plan term exists, "[a]lthough the Court provides due consideration to Plaintiff's subjective complaints, it also considers objective medical evidence and the degree to which such evidence supports Plaintiff's subjective complaints in making its ultimate determination of whether Plaintiff has met her burden." *Paff*, 2024 WL 4368976, at *5 (finding that claimant's subjective complaints were not sufficiently supported by objective medical evidence).

Notably, in Berg's cited cases, the claimants had unanimous support from their providers that was credibly supported by ample medical evidence. The *Holmstrom* court took care to note that "[e]very doctor who has actually seen her in the pertinent time period has concluded that she is disabled," and their opinions were supported by "overwhelming" evidence in contemporaneous records. 615 F.3d at 775. In addition to the medical records, the claimant also submitted two FCEs and a detailed letter from her treating physician giving specific measurements and exam findings that the reviewing physician described as "medical evidence . . . sufficient to support" additional restrictions and limitations. *Id.* at 763-65. Berg, in contrast,

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 7
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

had only one of many providers supporting her claim during the relevant period and his support is both cursory and belied by the contemporaneous records.

In *Bradford*, the claimant treated with only one doctor and that doctor provided him with consistent treatment and support for his claim. The court found the treating physician persuasive because his "opinions about Plaintiff's ability to maintain full-time employment are internally consistent, well-supported by detailed treatment notes, and grounded in personal observations of Plaintiff's symptoms and behaviors over an extended period of time" and "well-supported by the factual record." 49 F. Supp. 3d at 796-97.

Again, this is not true of Dr. Bacon's advocacy. Moreover, and importantly, the provider in *Bradford* specifically determined that the claimant was not exaggerating his symptoms. *Id.* at 797. Here, we have Dr. Page expressly accusing Berg of doing whatever she can to avoid going back to work.

*Bradford* also involved a vocational aspect absent here: an FCE that the claim administrator obtained and upon which it relied to determine that the claimant could only sit occasionally. But when the claim administrator identified alternative occupations, those occupations were sedentary and required more sitting than the FCE contemplated. *Id.* at 794, 797. In this file, all the reviews upon which Lincoln relied supported occasional use of her right hand, which is consistent with the occupations identified.

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 8
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

Likewise, the claimant in *Young* had strong and persuasive support from her only provider who, again, expressly determined she was not exaggerating. 165 F. Supp. 3d at 987. But even beyond that, the claim administrator arranged for an IME that **supported the treating physician's opinion**. *Id.* at 987-88. Ultimately, the record was replete with evidence, including evidence generated by the claim administrator, that the claimant was impaired. Berg had no IME, the four independent medical reviews did not support Dr. Bacon's opinion, and Dr. Page believed that she was exaggerating the extent of her impairment.

Finally, the *Witney* claimant had unanimous support from multiple providers and that support was "consistent with their contemporaneous notes documenting Plaintiff's appointments" which "consistently noted her diagnoses, symptoms, and life stressors . . . that were exacerbating her underlying conditions and prior sexual trauma." 2022 WL 4483179, *11-12. The court did not blindly defer to the claimant's self-reports, but credited the opinions of multiple providers when those opinions were "based on their consistent and numerous interactions with and observations of Plaintiff." *Id.* at *12. Dr. Bacon's notes, in contrast, are sporadic and summary. His opinions as to Berg's functionality are not supported by his own employees' examinations of her.

Berg's cases do not mean that claim administrators (or courts) must simply accept subjective complaints. To the contrary, the cases confirm that courts should

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 9
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

look beyond subjective complaints and demand corroboration from competent medical evidence. Again, this is particularly true where the plan demands objective medical proof of disability.

It also is worth noting that the *Holmstrom* and *Bradford* courts both criticized claim administrators for perceived unexplained changes in the claim administrator's view of the claimant's functionality. In other words, the courts expressed concern that the administrators had previously determined the claimant's proof was sufficient and then determined it was not without a clear reason. In *Holmstrom*, the claim administrator approved benefits into the any occupation period, paid any occupation benefits for years, and then terminated the claim under the any occupation standard. 615 F.3d at 762-63. In *Bradford*, when the claim administrator was approving own occupation benefits, the file included a claim note stating that "the prolonged [sitting restriction] would not allow for sed[entary] work." 49 F. Supp. 3d at 793-94. The claim administrator subsequently identified sedentary occupations when terminating under the any occupation standard. *Id.* at 793-94. Berg also relies on *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F. Supp. 3d 1068, 1079 (W.D. Wash. 2018), where the court made a "logical inference" that if a claim administrator paid benefits because a claimant could not perform sedentary work, the records would presumably demonstrate some improvement if the claim administrator had properly determined a claimant could subsequently perform sedentary work. That analysis does not apply

LINCOLN'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT - 10
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

here because Lincoln's assessment of Berg's functionality was consistent throughout—Berg was limited to occasional use of her right hand. This prevented her from performing her own occupation of team lead at Walmart (thus warranting payment of own occupation benefits) but did not preclude her from performing other suitable occupations (thus warranting denial of any occupation benefits).[2]  There is no inconsistency in Lincoln's claim decisions or rationale.

## II.    THE SSDI DECISION DOES NOT PROVE BERG'S CLAIM.

Berg relies heavily on her SSDI award to meet her burden of proof. It does not. SSDI and ERISA-governed LTD benefits are distinct benefits subject to distinct standards and the ALJ decision here is not persuasive evidence.

### A.    SSDI Determinations Are Set Up For Large-Scale Efficiency; ERISA Requires Accuracy And Compliance With Plan Terms.

The mere fact that the SSA approved Berg's claim under the Social Security regulations does not mean she can prove disability as defined by the Group Policy.

---

[2] This is not to suggest that a claim administrator may never change its view of a claimant's functionality. As acknowledged in *Holmstrom*, "[t]he prior determination [that benefits are payable] does not decide the case." 615 F.3d at 767; *see also Muniz v. Amec. Const. Management, Inc.*, 623 F.3d 1290 (9th Cir. 2010)(burden does not shift to administrator to disprove claim if benefits have been previously paid).

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 11
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

Rejecting the argument that SSDI concepts should be imported into ERISA cases, the Supreme Court cautioned there are "critical differences between the Social Security disability program and ERISA benefit plans." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003).

To cope with the more than 2.5 million [SSDI claims] each year, the Commissioner has published detailed regulations governing benefits adjudications. Presumptions employed in the Commissioner's regulations grow out of the need to administer a large benefits system efficiently. . . . [The presumptions work] to foster uniformity and regularity in Social Security benefits determinations made in the first instance by a corps of administrative law judges.

In contrast . . . nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide . . . Rather, employers have large leeway to design disability and other welfare plans as they see fit. In determining entitlement to Social Security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria. The validity of a claim to benefits under an ERISA plan, on the other hand, is likely to turn, in large part, on the interpretation of terms in the plan at issue.

*Id.* at 833–34 (internal quotations omitted).

*Nord* was not the first time the Court recognized that SSDI decisions are set up for expediency. Distinguishing SSDI claims from ADA claims, the Court

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 12
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

acknowledged that ADA claims (like ERISA LTD claims) can be more fact-intensive than SSDI claims, because "the SSA receives more than 2.5 million claims for disability benefits each year; its administrative resources are limited; . . . and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999). Moreover, "the SSA administers SSDI with the help of a five-step procedure that embodies a set of presumptions about disabilities, job availability, and their interrelation." *Id.* at 804. "The presumptions embodied in these questions . . . grow out of the need to administer a large benefits system efficiently. But they inevitably simplify, eliminating consideration of many differences potentially relevant to an individual's ability to perform a particular job." *Id.* Private LTD benefits, like ADA claims, can accommodate fact-intensive inquiries and do not need to sacrifice accuracy for efficiency. *See also Leahy v. Raytheon Co.*, 315 F.3d 11, 20 (1st Cir. 2002) ("The calculus of decision in social security cases differs significantly from that employed in ERISA cases."). The Supreme Court's distinction between SSDI and other types of benefits is illustrated here.

**B.    The ALJ's Decision Was Based On Limited Evidence And Presumptions That Do Not Apply To Lincoln or This Court.**

Although the ALJ held a hearing on June 23, 2023, it does not appear that the

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 13
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

ALJ received any medical records later than 2022. (157-159 (referencing nerve block, MRI, and physical therapy that Berg received in 2022, but nothing later).) This means that the ALJ did not have Sullivan's examination, which showed only a mild decrease in grip strength and undermined Dr. Bacon's summary and severe opinion that Berg cannot use her right hand at all.

On the vocational front, the decision lacks critical detail. The vocational findings are all based on the ALJ's determination of residual functional capacity ("RFC") which was that Berg could perform light work except with her right hand, she is limited to lifting up to 5 lbs "both occasionally and frequently" and "can occasionally reach overhead, push and pull." (156.) "She can handle, finger, and feel with the dominant hand for a maximum of 10 percent of the work period." (*Id.*) Berg, according to the ALJ, cannot "climb ladders, ropes or scaffold" and must limit or avoid exposure to various environments and dangerous machinery/heights. (*Id.*) This RFC lines up with the material portions of Lincoln's assessment except for using her right hand to handle/finger/feel for 10 percent of the workday (Lincoln said "occasionally").

The ALJ explained that Berg's past work history exceeded her RFC—again this is consistent with Lincoln's determination Berg could not perform her own occupation. (160.) The ALJ then noted that Berg "was an individual closely approaching advanced age," which is irrelevant to ERISA benefits, but triggers

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 14
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

certain presumptions for SSDI benefits. (*Id.*) Citing to 20 C.F.R. § 404.1568, the ALJ then proclaimed that Berg's "acquired job skills do not transfer to other occupations within the [RFC]." (*Id.*) The ALJ did not explain what Berg's acquired job skills were or why they did not transfer; however, the cited regulation discusses unskilled, semiskilled, and skilled work. 20 C.F.R. § 404.1568. Under SSA presumptions, "[a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a). It appears that the ALJ determined that Berg's prior work experience was unskilled, thus leading to no transferrable skills. (160 (discussing "unskilled light occupation based"). There is no such presumption for ERISA benefits; Lincoln fairly considered all job skills Berg acquired in her years of employment.

Even if the ALJ considered Berg's prior work experience to be semiskilled or skilled, the transferability of those skills "depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 404.1568(d)(1). Again, there is no such rule confining vocational analyses in ERISA cases. And here, the Group Policy specifically contemplates that "any occupation" includes an occupation that Berg can "become[] reasonably fitted by training [or] education." (LNBBPOL000013.) In other words, the SSDI vocational analysis considers only an artificially circumscribed list of transferrable skills to determine whether a claimant is already qualified for an occupation similar to her

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 15
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

prior occupation; ERISA and the Group Policy require Lincoln and this Court to consider all skills possessed by Berg (even when gained in "unskilled" jobs) and decide whether she could become trained to perform another occupation (not just one similar to prior work).

Based on the SSA regulations, the ALJ asked the assigned vocational expert whether there were unskilled light occupations for which Berg was already qualified given her "age, education, work experience, and [RFC]." (160.) The Notice of Decision provides no analysis of how the vocational expert reached the conclusion that there were no such occupations.[3] (160.)

In contrast to the SSA presumptions, Jason Miller performed a robust transferrable skill analysis that expressly considered Berg's "17+ years of Work History." (177.) He adjusted dozens of occupational skills and aptitudes to fit Berg's work experience (for instance, general learning ability, numerical aptitude, coordinating, compiling, supervising) and then compared those skills to occupations

---

[3] Vocational experts need not fully explain their rationale in SSDI proceedings. *Biestek v. Berryhill*, 587 U.S. 97, 105 (2019) ("a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data"). And the SSA must prove that suitable alternative occupations exist. *See, e.g.*, *Vered v. Colvin*, 2017 WL 639245, at *10 (E.D.N.Y. Feb. 16, 2017)

LINCOLN'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT - 16
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

that fit within Berg's physical functionality.[4] (180.) Mr. Miller's analysis yielded three occupations that there is no indication the ALJ even considered: surveillance system monitor, gate guard, and information clerk. (178.) These occupations are not invalidated just because they did not fit within the strict and regimented SSA presumptions. Notably, Lincoln provided Mr. Miller's analysis to Berg and she declined to rebut it. (182-83.) If she believed that the vocational determination was incorrect, she had the burden of adducing vocational evidence of her own; she did not. *Geiger v. Zurich American Ins. Co.*, 72 F.4th 32 (4th Cir. 2023)

### III. BERG'S REMAINING COMPLAINTS ABOUT THE DECISION-MAKING PROCESS ARE UNFOUNDED.

Having failed to prove her claim, Berg lobs various procedural complaints at Lincoln. Procedural complaints may be relevant to a discretionary review, but are not relevant where, as here, the Court is awarding no deference to Lincoln's decision.

---

[4] Berg criticizes Lincoln for not providing Miller with the ALJ's RFC findings. But Mr. Miller is a vocational expert, not a medical expert. He would have no reason to second-guess the medical information provided by Lincoln, which was appropriately based on Dr. Layno-Moses's review of a more updated and complete medical file than the ALJ possessed. *See McIntyre v. Reliance Standard Life Ins. Co.*, 73 F.4th 993 (8th Cir. 2023).

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 17
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

*Gray v. United of Omaha*, 2024 WL 324899 (C.D. CA, Jan. 29, 2024). More importantly, arguments about Lincoln's "bad conduct" are not proof of disability; they are a smokescreen. If Berg believed that Lincoln's process unfairly deprived her of her ability to prove her claim (it did not), she could have asked this Court to supplement the administrative record with that proof (she did not). *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995); *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007). In any event, her attacks are meritless.

### A.    Lincoln Adequately Informed Berg Of The Basis For Its Decision And Evidence She Should Provide On Appeal.

Berg selectively quotes from Lincoln's July 14, 2023 letter to fabricate an argument that Lincoln failed to give her sufficient information to appeal. Reading the whole letter disposes of that argument. The letter recounted Dr. Baretto's review, including his description of numerous exam findings and his recitation of Berg's subjective complaints. (271.) Lincoln then outlined the restrictions and limitations Dr. Baretto found supported and recounted his efforts to reach her providers. (271-72.) Having fully explained its rationale for determining Berg could work, Lincoln invited her, on appeal, to provide "the reasons you feel like the decision to discontinue LTD coverage is incorrect." (274.) Lincoln also encouraged her to provide any medical information not previously provided as well as information on

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 18
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

her SSDI claim. (274-75.) Lincoln gave Berg more than sufficient information to permit her to perfect her appeal.

In arguing otherwise, Berg impermissibly conflates "perfect her claim/case" and "win her appeal/case." The Ninth Circuit rejected this argument in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999). Assessing the meaning of the term "perfect," the Court reasoned "Kearney's claim did not fail because he failed to submit needed evidence. It failed because Standard, having considered all the evidence, concluded that it needed no more and that Mr. Kearney was not disabled." *Id.* at 1091–1092. Berg, too, simply could not muster sufficient evidence to prove her claim. That is a shortcoming in her proof, not Lincoln's correspondence.

## B. Lincoln Had No Obligation To Send Berg For An In-Person Examination.

Berg repeatedly suggests that Lincoln should have sent her for an IME or FCE. But Lincoln has no duty to disprove her claim. *See Muniz,* 623 F.3d at 1296; *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 63 F. Supp. 2d 1145, 1155 (C.D. Cal. 1999), aff'd, 370 F.3d 869 (9th Cir. 2004) (claimant "cannot shift the burden to the plan administrator to 'disprove' an alleged disability."). Nor does ERISA or the Group Policy impose a duty to have a claimant physically examined. *Killen v. Reliance Standard Life Ins. Co.,* 776 F.3d 303, 308 n.3 (5th Cir. 2015); *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 91 (2d Cir. 2009); *Williams v. Aetna Life*

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 19
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

*Ins. Co.*, 509 F.3d 317, 325 (7th Cir. 2007); *Rutledge v. Liberty Life Assurance Co.*, 481 F.3d 655, 661 (8th Cir. 2007); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005); *Nicula v. First Unum Life Ins. Co.*, 23 Fed. App'x 805, 807 (9th Cir. 2001).

Here, the file contains multiple exams spanning from June 2021 through May 2023. While Berg's providers did not frequently or robustly test her hand functionality, the examinations overwhelmingly note normal hand function or slightly diminished strength. (Ex. A.) Four independent reviewing physicians considered the entire record as it existed at the time of their review and determined it was sufficient to credit Berg's subjective complaints[5] and opine as to restrictions and limitations. (Dkt. 25, at 7, 11-13.) Without exception, they concluded Berg could use her right hand occasionally. No examination was needed.

---

[5] Lincoln has described how each reviewing physician expressly credited Berg's subjective complaints. (Dkt. 25, at 7, 11-13.) Yet Berg says they did not, citing *Bombassei v. Lincoln Nat'l Life Ins. Co.*, 2023 WL 3605968, at *5 (E.D. Mich. May 23, 2023). In *Bombassei*, the court found that two reviewers completely failed to consider complaints of excessive sleepiness. Here, each reviewing physician specifically mentioned Berg's pain and accounted for it. Her critique falls flat. In any event, Berg cannot prove her claim by attacking the independent reviewers.

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 20
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

### C. Lincoln Provided The Reviewers With Complete Medical Evidence And Did Not "Cherry Pick."

Other courts have criticized other claim administrators for "cherry picking" or selectively reviewing and providing medical evidence to reviewing physicians. In another attempt to wedge her claim into a judicial criticism that does not fit, Berg parrots that accusation here, but fails to support it. She does not dispute that each reviewing physician had every medical record she had provided at the time of the review. Rather, she faults Lincoln for not providing the reviewing physicians with the ALJ Notice of Decision. She is wrong. Lincoln did provide the ALJ decision for review. (Ex. B, Declaration of Jodi George.)

Beyond that, the ALJ decision does not contain any new medical evidence. The SSA did not have Berg examined by its own physician. (158.) The only medical evidence cited are the medical records Lincoln had and considered. (157-59.) Indeed, Dr. Layno-Moses (the only doctor reviewing the file after Plaintiff submitted her award) had more medical records than the ALJ because her review included information from 2023. To the extent the ALJ decision described Berg's self-reports, those were already reflected in her medical records. (156-57.) Lincoln did not "cherry pick" records.

## IV. CONCLUSION

The Court should uphold Lincoln's decision here.

LINCOLN'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT - 21
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

Respectfully submitted this 5th day of November, 2024.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Kristina N. Holmstrom
Russell S. Buhite, WSBA #41257
1201 Third Avenue, Suite 5150
Seattle, WA 98101
Telephone: (206) 693-7052
Facsimile: (206) 693-7058
Email: russell.buhite@ogletree.com

~ and ~

Kristina N. Holmstrom, AZBN 023384
*Admitted Pro Hac Vice*
2415 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 778-3700
Facsimile: (602) 778-3750
Email: kristina.holmstrom@ogletree.com

*Attorneys for Defendant The Lincoln National Life Insurance Company*

LINCOLN'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT - 22
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November, 2024, I served the foregoing

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT via

the method(s) below upon the following parties:

Melton L. Crawford, WSBA #22930
LAW OFFICE OF MEL CRAWFORD
3244 NE 103rd Street
Seattle, WA 98125-7821
Telephone: (206) 694-1614
Facsimile: (206) 905-2342
Email: melcrawford@melcrawfordlaw.com

Robert J. Rosati, SBN #112006
(admitted *pro hac vice*)
THE ERISA LAW CENTER
6485 North Palm Avenue, Suite 105
Fresno, CA 93704-1072
Telephone: (559) 478-4119
Facsimile: (559) 478-5939
Email: robert@erisalg.com

*Attorneys for Plaintiff Barbara Berg*

☒    by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

☐    by **mailing** a true and correct copy to the last known address of each person listed above. It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the United States Postal Service in Seattle, Washington.

☐    by **e-mailing** a true and correct copy to the last known email address of each person listed above.

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT - 23
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058

SIGNED THIS 5th day of November, 2024 at Seattle, Washington.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Rose Ramsey*
Rose Ramsey, Practice Assistant
rosie.ramsey@ogletree.com

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT - 24
Case No. 2:24-cv-00097-SAB

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7052 | Fax: 206-693-7058