Robert J. Rosati, CA SBN #112006
Email: robert@erisalg.com
6485 N. Palm Ave., Ste. 105
Fresno, CA 93704
Telephone: (559) 478-4119
Facsimile: (559) 478-5939
*Admitted Pro Hac Vice*

Mel Crawford, WSBA #: 22930
Law Office of Mel Crawford
3244 N. E. 103rd St.
Seattle, WA  95125-7821
Email: melcrawford@melcrawfordlaw.com
Telephone: (206) 694-1614
Facsimile: (206) 905-2342

Attorneys for Plaintiff: *Barbara Berg*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA BERG,<br><br>       Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>       Defendant. | Case No.  2:24-cv-97-SAB<br><br>**PLAINTIFF'S RESPONSE MEMORANDUM TO DEFENDANT LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD**<br><br>**JUDGE:**    Stanley A. Bastian |

///

///

///

///

///

///

///

///

///

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................1

II.   LINCOLN FAILED TO CONSIDER THE "REASONABLE CONTINUITY"
      REQUIREMENT OF THE POLICY...............................................................3

III.  LINCOLN IS LIMITED TO THE RATIONALES IT ADVANCED
      ADMINSTRATIVELY.......................................................................................5

      A.    The Legal Standard:  New Rationales May Not Be Raised in Litigation..............5

      B.    The Rationales Lincoln Raised Administratively........................................7

IV.   LINCOLN'S ATTACKS ON DR. BACON'S AND BERG'S CREDIBILITY
      ARE INPROPER, HAVE BEEN WAIVED, AND ARE UNSUPPORTED BY
      THE EVIDENCE ...............................................................................................9

V.    LINCOLN'S ARGUMENTS REGARDING "OBJECTIVE MEDICAL
      EVIDENCE" ARE WITHOUT MERIT ..........................................................10

VI.   LINCOLN'S ARGUMENTS ABOUT "TIME CONCURRENT" EVIDENCE
      ARE WITHOUT MERIT ..................................................................................13

VII.  LINCOLN DID NOT REASONABLY CONSIDER BERG'S SSDI DECISION .......15

VIII. LINCOLN ADMINISTRATIVELY DID NOT RELY UPON THE OPINIONS
      OF DRS. LIN AND ROJHANI.........................................................................17

IX.   BERG'S SUBJECTIVE EVIDENCE IS SUFFICIENT PROOF .............................18

X.    CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Autran v. Proctor &Gamble Health and Long Term Disability Plan*, 27 F.4th 405 (6th Cir. 2022) ...................................................................................16

*Barbu v. Life Insurance Company of North America*, 35 F. Supp. 3d 274 (E.D. N.Y. 2014) ...................................................................................14

*Blankenship v. Liberty Life Assurance Company of Boston*, 486 F.3d 620 (9th Cir. 2007) .....................................................................................14

*Boone v. Life Assurance Company of Boston*, 161 F. Appx. 469 (6th Cir. 2005) .................................................................................11 - 13

*Brewes v. Commissioner of Social Security Administration*, 682 F.3d 1157 (9th Cir.2012) .........................................................................................5

*Canseco v. Construction Laborer's Pension Trust*, 93 F.3d 600 (9th Cir. 1996) .....18

*Carr v. Reno*, 23 F.3d 525 (D.C. Cir.1994) .......................................................... 4-5

*Collier v. Lincoln Life Assurance Company of Boston*, 53 F.4th 1180 (9th Cir. 2022) ................................................................................... 6-7

*Day v. AT&T Disability Income Plan*, 698 F.3d 1091 (9th Cir. 2012) ....................14

*Delaney v. Prudential Insurance Company of America*, 68 F. Supp. 3d 1214 (D. Ore. 2014) ......................................................................................5

*Douglas v. Bowen*, 836 F.2d 392 (8th Cir.1987)....................................................6

*Doyle v. Liberty Life Assurance Company of Boston*, 542 F.3d 1352 (11th Cir. 2008) .............................................................................11, 13

*Garcia v. Colvin*, 741 F.3d 758 (7th Cir.2013)......................................................5

*Ghanim v. Colvin*, 763 F.3d 1154 (9th Cir.2014) ...................................................5

*Gilmore v. Liberty Life Assurance Company of Boston*, 2014 WL 1652048 (N.D. Cal. April 24, 2014).................................................................13

*Hawkins v. First Unum Corporation Long-Term Disability Plan*, 326 F. 3d 914 (7th Cir. 2003) ...................................................................................10

*Jackson v. Metropolitan Life Insurance Company*, 303 F. 3d 884 (8th Cir. 2002)...17

*James v. Liberty Life Assurance Company of Boston*, 582 F. Appx. 581 (6th Cir. 2014) ...................................................................................12

*Lyttle v. United of Omaha Life Insurance Company*, 341 F. Supp. 3d 1071 (N.D. Cal. 2018).............................................................................3, 15

*Rao v. Life Insurance Company of North America*, 100 F. Supp. 3d 210 (N.D. N.Y 2015).................................................................................15

*Santiago v. Temple Univ.*, 739 F. Supp. 974 (E.D. Pa.1990) .....................................5

*Skusa v. Liberty Life Assurance Company of Boston*, 2017 WL 4535705 (W.D. Mich July 14, 2017).......................................................12-13

*Tranbarger v. Lincoln Life & Annuity Company of New York*, 68 F. 4th 311 (6th Cir. 2023) ...........................................................15-16

*Tyndall v. National Education Centers, Inc. of California*, 31 F.3d 209 (4th Cir. 1994) ...............................................................4

*Wimbley v. Bolger*, 642 F. Supp. 481, (W.D.Tenn.1986), aff'd, 831 F.2d 298 (6th Cir.1987) ..............................................................4

*Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014) .............................................5

## REGULATIONS

29 C.F.R. §2560.503-1(j)(6)(i)(C)...............................................................15

29 C.F.R.§ 2560.503-1(h)(2)(iv) ................................................................15

## I.    INTRODUCTION

Lincoln's "Opening Brief on the Administrative Record", ECF Doc. No. 25, ("Lincoln's Opening Brief") further demonstrates the lack of merit of Lincoln's defense.

1.    Lincoln pays lip service to the terms of the Policy, but did not actually consider the material terms of the Policy in its decisions.  In fact, in its November 3, 2023, appeal denial letter, Lincoln quotes the wrong policy.  Significantly, Lincoln ignored the Policy's requirement that to be denied benefits the employee must be able to perform an occupation with "reasonable continuity."

2.    Lincoln correctly argues that "it has a duty to provide a full and fair review."  Lincoln Opening Brief 16:9-11.  But it did not do so.  Most significantly, most of the rationales presented in Lincoln's Opening Brief were not presented during the administrative process and thus are waived and are not properly raised in this action.

3.    Lincoln challenges both Dr. Bacon's credibility and Ms. Berg's credibility in Lincoln's Opening Brief.  However, it did not do so administratively and therefore waived those arguments.  Furthermore, those arguments factually lack merit.

4.    Lincoln suggests Berg's claim fails because she did not present "objective medical evidence."  First, that rationale is inconsistent with the requirements of the Policy.  Second, while Lincoln referenced the lack of certain types of evidence in its final denial letter, AR 70: "conclusion," it never asserted that such evidence was required, just that such evidence was not provided.  Thus, this rationale also was not raised administratively and has been waived.

5.    Lincoln asserts Berg did not provide "time concurrent" evidence.  First, there is no such requirement in the Policy.  Second, Lincoln never presented that rationale administratively and therefore waived it.  Third, under the law, there is no requirement for "time concurrent" evidence.  Fourth, in fact, Lincoln itself explicitly

decided to terminate Berg's benefits <u>without</u> "time concurrent" evidence because it made the decision to terminate her benefits effective September 6, 2023, almost two months earlier by letter dated July 14, 2023 - - so it could not possibly have had "time concurrent" evidence.

6.    Lincoln was required to take into account and explain its basis for disagreeing with the Social Security Disability Income ("SSDI") decision in favor of Berg.  But neither its reviewing doctor on appeal nor its reviewing vocational expert were provided with a copy of that decision or commented on it and Lincoln's only comment on the SSDI decision mischaracterizes that decision.  That is, Lincoln's stated basis for disagreeing with the SSDI decision is plainly not accurate.

7.    Lincoln asserts that four medical reviewers support its position. However, it did not reference Dr. Michael Lin's report or Dr. Solomon Rojhani's report in either of its denial letters and it paid benefits for two years after it received Dr. Lin's report and for nine months after it received Dr. Rojhani's report.

The Administrative Record shows that Lincoln's decisions to terminate Berg's benefits and deny her appeal were not based on the requirements of the Policy or on the evidence, but instead were based primarily upon unsubstantiated opinions and conclusions reflecting Lincoln's failure to provide its reviewing doctors and final vocational reviewer relevant evidence and its failure to examine Berg.  See Berg's Motion for Judgment, ECF No. 27.  Berg will not repeat the arguments presented therein, which arguments demonstrate the invalidity of many of Lincoln's arguments.  Lincoln's evidence is weak not because its doctors are biased, but because its doctors and vocational reviewer were "sandbagged" by Lincoln, and thus provided unsupported reports and opinions.  In litigation Lincoln is now presenting several new rationales, never presented administratively and thus waived, which are wholly invalid.  Realistically, Lincoln's reliance on those new rationales further demonstrates that it knows that it has no case and so is trying to create one from whole cloth.

**PLAINTIFF'S RESPONSE MEMORANDUM TO DEFENDANT LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 2 -**

## II.  LINCOLN FAILED TO CONSIDER THE "REASONABLE CONTINUITY" REQUIREMENT OF THE POLICY

The questioned presented is whether Berg is disabled under the terms of the Policy.  See Berg's Motion, ECF Doc. No. 27, at 2:22-25.  Under the Policy, after 24 months of benefits have been paid, disability is defined as

"… the Covered person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." LNBBPOL15.

**Material and Substantial Duties**

"means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." LNBBPOL18.

**Any Occupation** means

"any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."  LNBBPOL13.

**Proof**:

"means the evidence in support of a claim for benefits and includes, but is not limited, the following

1.    a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2.    an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

3.    the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits. LNBBPOL21.

In *Lyttle v. United of Omaha Life Insurance Company*, 341 F. Supp. 3d 1071, 1083-1085 (N.D. Cal. 2018), the court held that the defendant failed to consider whether the plaintiff could perform his occupation with reasonable continuity in light of pain and his use of medications.  None of Lincoln's medical reviewers and neither of Lincoln's vocational reviewers addressed whether Berg had the capacity to work with reasonable continuity.  See: Lin Report, AR 709-716; Rojhani Report,

AR 498-506; Barreto report, AR 286-295; Layno-Moses' report, AR 165-173; and Layno-Moses' Addendum, AR 92-95. None of those reports references or discusses Berg's capacity to work with "<u>reasonable</u> <u>continuity</u>" as required by the Policy; each only considers Berg's restrictions and limitations. Similarly, Lincoln's two vocational reports do not reference or mention the Policy standard of "reasonable continuity." Both consider only Berg's job description, training, education, and experience, and the specific record review (Barreto or Layno-Moses) provided to the vocational experts. See Bach report, AR 277-283; Miller report, AR 177-180.

Dr. Bacon was <u>not</u> <u>asked</u> to address "reasonable continuity," but was asked by Lincoln "How many days in a normal month would you expect this patient to have pain severe enough to keep them from attending work?" He responded ">4 Days/Month". AR 257. <u>That</u> is unrefuted evidence that Berg cannot work with reasonable continuity.

Missing four or more days of work each month is not working with reasonable continuity. "It is elemental that who does not come to work cannot perform any of his job functions, essential or otherwise." *Wimbley v. Bolger*, 642 F. Supp. 481, 485 (W.D.Tenn.1986), aff'd, 831 F.2d 298 (6th Cir.1987). "Therefore, a regular and reliable level of attendance is a necessary element of most jobs." *Tyndall v. National Education Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994); *see also, Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir.1994) (holding that "coming to work regularly" is an "essential function"); *Law v. United States Postal Serv.*, 852 F.2d 1278, 1279, 1280 (Fed. Cir.1988) (holding that attendance is a minimum function of any job); *Santiago v. Temple Univ.*, 739 F. Supp. 974, 979 (E.D. Pa.1990) ("attendance is necessarily the fundamental prerequisite to job qualification"), aff'd, 928 F.2d 396 (3d Cir.1991). An employee who cannot meet the attendance requirements of the job at issue cannot be considered a "qualified individual." *See Carr*, 23 F.3d at 529, 530; *Santiago*, 739 F. Supp. at 979.

**PLAINTIFF'S RESPONSE MEMORANDUM TO DEFENDANT LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 4 -**

Similarly, in *Delaney v. Prudential Insurance Company of America*, 68 F. Supp. 3d 1214, 1229-1230 (D. Ore. 2014), the Court explained:

> "Regular job attendance is a requirement of virtually all jobs, and certainly a requirement of those jobs which would provide the requisite income to disentitle Delaney to LTD benefits under the Plan if she could otherwise perform them. In the social security context, legions of cases rest in whole or in part on vocational expert testimony that missing two or more days of work per month renders a claimant unemployable. *See, e.g., Ghanim v. Colvin*, 763 F.3d 1154, 1159 (9th Cir.2014) (missing two or more days per month would preclude work as a kitchen helper or commercial cleaner); *Brewes v. Commissioner of Social Security Administration*, 682 F.3d 1157, 1163 (9th Cir.2012) (missing two or more days per month would make claimant unemployable as a photocopying machine operator, laundry worker, or janitor); *Yurt v. Colvin*, 758 F.3d 850, 855 (7th Cir. 2014) (vocational expert testimony that "in competitive employment workers were expected to be on task 80 to 85 percent of the time and could not miss more than one or two days per month and up to approximately ten per year"); *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir.2013) (vocational expert testimony that "a worker who misses work more than one day a month (beyond sick days, vacation days, and other authorized leave) would 'have difficulty sustaining competitive employment'"); *Douglas v. Bowen*, 836 F.2d 392, 396 (8th Cir.1987) (vocational expert testimony that if the claimant "had more than two absences a month due to his impairments, he could not find work in the national economy".)

Here, Berg presented persuasive and credible evidence - - Dr. Bacon's opinion that Berg would miss four days or more of work each month as a result of chronic pain. That evidence stands unrefuted and uncontradicted. Lincoln never addressed the reasonable continuity requirement of the Policy. An employee who will miss four days or more of work each month is not able to work with reasonable continuity.

## III. LINCOLN IS LIMITED TO THE RATIONALES IT ADVANCED ADMINSTRATIVELY

Lincoln improperly advances rationales in this litigation which it did not raise administratively. Those rationales have all been waived and should be disregarded by this Court. See Berg Motion at 2:28 – 3:1.

A. The Legal Standard: New Rationales May Not Be Raised in Litigation

The law is clear: "a plan administrator undermines ERISA and its implementing regulations when it presents a new rationale to the district court that

was presented to the claimant as a specific reason for denying benefits during the administrative process." *Collier v. Lincoln Life Assurance Company of Boston*, 53 F.4th 1180, 1186 (9th Cir. 2022). In *Collier*, the Ninth Circuit explained that "Lincoln did not cite Collier's lack of credibility or the lack of objective evidence when it denied the claim initially and on review." *Id*. at 1187. The Ninth Circuit reasoned that "by failing to make these arguments during the administrative process, Lincoln effectively held those reasons "in reserve" rather communicate them to Collier." *Id*. at 1187. The Ninth Circuit concluded that because Collier did not waive such arguments and Lincoln failed to raise them during the administrative process, "Lincoln effectively 'sandbagged' Collier with new rationales at a stage in the proceedings where she could not meaningfully respond." *Id*. at 1188. The Ninth Circuit concluded that a district court may not adopt a newly presented rationale when applying *de novo* review. "When a district court conducts a de novo review of a benefits denial, it evaluates the plan administrator's reasons for denying benefits without giving deference to its conclusions or opinions." *Id*. at 1188.Thus, had Lincoln cited Collier's lack of credibility as a reason for denying benefits in the administrative process, the district court would have been within province to review the administrative record and determine whether the evidence supported that decision. (citation) "But a district court cannot adopt post-hoc rationalizations that were not presented to the claimant, including credibility-based rationalizations, during the administrative process." *Id*. at 1188.

Here, almost every rationale raised in Lincoln's Opening Brief is a rationale Lincoln did not present administratively. Berg objects to each of these rationales, and this Court should disregard them because these new arguments have been waived. It is clear error for a district court to adopt "newly presented rationales when applying *de novo* review." *Id.*

///

///

B.    The Rationales Lincoln Raised Administratively

In its July 14, 2023, termination of benefits letter, AR 270-276, Lincoln quoted Dr. Barreto's report at length, including Dr. Barreto's consideration of Berg's subjective complaints, as follows:

> "Functional impairment encompasses not only objective exam findings but subjective complaints. The associate's complaints of pain and limitation have been consistent, durable, supported by numerous reports, and there has been no signs of malingering or symptom embellishment." AR 271.

Nonetheless, Dr. Barreto concluded that Berg could work full-time with restrictions.

> "there is documentation to support impairment and therefore restrictions and limitations from March 8, 2021 to ongoing. The associate can work full time within these restrictions and limitations. Restrictions and limitations would be permanent." AR 272

Dr. Barreto's restrictions and limitations were push, pull, lift, carry, reaching (overhead, at desk level, below desk level), fine and gross manipulation - - all restrictions on the right upper extremity, only. AR 292-293. Dr. Barreto's rationale: "It should be noted that the claim does have upper extremity strength, however, despite high pain levels, multiple progress reports note the claim is not in acute distress." AR 293. As stated, he did not address whether Berg could work with reasonable continuity; he only addressed "restrictions and limitations," which he acknowledged are permanent. AR 292.

Dr. Layno-Moses was not asked and did not address whether Berg could work with reasonable continuity; she too was asked and provided opinions about Berg's restrictions and limitations. See AR 219-222 (for referral questions), AR 165-173(initial report), and AR 92-95 (Layno-Moses's Addendum Report). She opined that Berg had greater capacity than Barreto's opinion did. AR 171-172.

In its letter of November 3, 2023, AR 67-74, also at 75-84, Lincoln summarized Dr. Layno-Moses's report, AR 76, and explained, "the existence of a medical condition/diagnosis in and of itself does not equate to eligibility for

disability benefits. The focus of our assessment was not whether or not a condition exists; but whether or not impairment exists that would preclude you from performing the duties of any occupation. Based on our review, which included independent reviews, we conclude the information is insufficient to support evidence of continued impairment." AR 77.

Lincoln's November 3, 2023, letter does reference the Social Security Administration's ruling. AR 77-78. The letter concluded, "In summary we acknowledge that you may have continued to experience some symptoms associated with your condition beyond September 5, 2023. However, the information does not contain significant physical exam findings, diagnostic test results or other forms of medical documentation supporting your impairments and symptoms remained of such severity, frequency, and duration that they resulted in restrictions or limitations rendering you unable to perform the duties of your occupation after that date." AR 78.

Significantly, Lincoln's July 14, 2023, letter correctly quotes the definition of disabled at AR 271, which includes the requirement of "unable to perform with reasonable continuity." However, Lincoln's November 3, 2023, letter does not quote the correct definition of disabled or disability, omitting the "with reasonable continuity" phrase. There are two versions of the November 3, 2023, letter in the Administrative Record. See AR 67-73 and AR 75-81. Both of them clearly quote a different policy which does not reference "reasonable continuity". See AR 67-73, at AR 70-71, and AR 75-81, at AR 78-79, both of which provide relevant definitions, different from the definitions in the Policy, including a definition of "own occupation" which references Liberty, not Lincoln, and which does not include the requirement of "reasonable continuity." That likely is why "reasonable continuity" was not considered.

///

///

**PLAINTIFF'S RESPONSE MEMORANDUM TO DEFENDANT LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 8 -**

#### IV.    LINCOLN'S ATTACKS ON DR. BACON'S AND BERG'S CREDIBILITY ARE INPROPER, HAVE BEEN WAIVED, AND ARE UNSUPPORTED BY THE EVIDENCE

Despite the arguments in Lincoln's Opening Brief, see 2:9-12 (Dr. Bacon is biased); 3:4-6 (Bacon's opinion is "advocacy"); 14:17 – 15:12 (Bacon's opinion contradicts his records and the medical evidence); 1:12-14 (questioning Berg's credibility), Lincoln never asserted administratively that Dr. Bacon is not credible or that he is biased or that Ms. Berg is not credible.  Lincoln's rationales now that Dr. Bacon is biased and should not be believed, and that Ms. Berg should not be believed are therefore improper.  Lincoln waived those rationales by not raising them administratively.

Furthermore, those rationales are simply contrary to the evidence.  There is no evidence in the Administrative Record supporting the conclusion that either Dr. Bacon or Ms. Berg is not credible.  Administratively, neither Lincoln nor any of its reviewing doctors ever asserted that Dr. Bacon was not credible or that he was biased, or that his diagnoses were incorrect; Lincoln and its doctors simply disagreed with Dr. Bacon's conclusion about Berg's capacity to work - - but literally provided no reasons for that disagreement and, of course, based that disagreement on cherry-picked evidence.  Lincoln's assertions that Dr. Bacon is "biased," Lincoln's Opening Brief 2:10, his opinion, "is highly restrictive and in conflict with the testing performed by his own physician's assistant", and that he "collaborated with Berg to draft the most recent disability form," Lincoln's Opening Brief 2:10-12, are wholly unsupported hyperbole at odds with Lincoln's administrative rationales.  Lincoln's argument that it "gives Berg the benefit of the doubt and approves own occupation benefits", Lincoln's Opening Brief 5:12, misstates the evidence.

Lincoln argues - - without evidence - - that Dr. Bacon uncritically accepted Berg's subjective beliefs about her functionality, citing cases that most of time that

physicians accept at face value what patients tell them and that this is more or less required of treating physicians.  Lincoln's Opening Brief 18:6 - 19:2. This argument is without merit.  There is no evidence that Dr. Bacon uncritically accepted Berg's subjective beliefs about her functionality.  That most of the time physicians accept at face value what patients tell them is not <u>evidence</u> and even if it were construed to be evidence, it is the weakest possible evidence that Dr. Bacon uncritically accepted Berg's subjective beliefs about her functionality, especially since the frequency is not indicated; it could be 50.000001 percent.  *See, e.g., Hawkins v. First Unum Corporation Long-Term Disability Plan*, 326 F. 3d 914, 919 (7th Cir. 2003) in which Judge Posner dismissed an argument that a plaintiff with fibromyalgia could work because the majority of individuals suffering from fibromyalgia can work, as the weakest possible evidence that the plaintiff could, given that the size of the majority was not indicated.

Contrary to Lincoln's argument, this case does not "turn on whether Berg can occasionally use her right hand."  Lincoln's Opening Brief 17:9-10.  The question presented is whether Berg is unable to perform with reasonable continuity the material and substantial duties of any occupation.  Berg is right hand dominant; she has a chronic pain condition.  Nobody prior to Lincoln's litigation posture questioned or disputed that Berg's use of her right hand exacerbates her pain.

## V.    LINCOLN'S ARGUMENTS REGARDING "OBJECTIVE MEDICAL EVIDENCE" ARE WITHOUT MERIT

Lincoln argues that Berg failed to provide "objective medical evidence." Lincoln's Opening Brief at ¶ 3:8-12 (quoting the Policy); 7:10-13 (Malone did not provide objective medical information); 19:3-14 (Courts may require objective evidence).  But Lincoln never presented that rationale administratively and therefore, it is waived.

Second, Lincoln's argument implies that the Policy <u>requires</u> objective

medical evidence, see Lincoln Opening Brief 4:7-12; 19:3-14.  Although, courts have occasionally held that the specific language of the Policy requires objective evidence, *see, e.g., Doyle v. Liberty Life Assurance Company of Boston*, 542 F.3d 1352, 1358 (11th Cir. 2008) and *Boone v. Life Assurance Company of Boston*, 161 F. Appx. 469, 472-474 (6th Cir. 2005), each of those cases involved discretionary review.  *Boone, supra*, 161 F. Appx. At 472; *Doyle, supra*, 542 F.3d at 1357.  Other courts have disagreed with those rulings.  *See, e.g., James v. Liberty Life Assurance Company of Boston*, 582 F. Appx. 581, 589 (6th Cir. 2014): "the policy does not require the claimant to only produce objective evidence.  Under the plain language of the policy, proof includes but is not limited to … forms of objective medical evidence.  Therefore, evidence beyond the enumerated categories that Liberty Life considers objective is a liable to substantiate a claim of disability under the policy."

Similarly, in *Skusa v. Liberty Life Assurance Company of Boston*, 2017 WL 4535705 (W.D. Mich July 14, 2017), *3, 6-7, the court discussed the *James* decision, explaining that the policy "does not require a finding of disability to be supported exclusively by 'objective' evidence" noted that Liberty discounted these objective symptoms out of hand and denied benefits because "the available information does not contain exam findings, diagnostic test results, or other forms of objective medical evidence substantiating his symptoms" *Id.* at *6 - - the identical language used here.  The court explained that "it remains inappropriate for an administrator to dismiss a claimant's self-reports and other subjective evidence of disability, particularly where the administrator has no basis for believing the evidence is unreliable… Moreover, as the Sixth Circuit remarked in *James*: "records of ... physical examinations, chart notes, lab and other tests results, and physician diagnoses all ... qualify as objective medical evidence under the Policy." *Id*. at *7.  In other words, Liberty's decision to adopt Dr. Lobel's conclusion that "no current impairments are supported by objective medical evidence" is inexcusable.  *Id*. at *7.  The court concluded that, "Liberty's dogged and exclusive

**PLAINTIFF'S RESPONSE MEMORANDUM TO DEFENDANT LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 11 -**

reliance on an alleged lack of "objective" evidence - - even though plenty of evidence existed, even to Liberty's satisfaction initially - - was inexcusable. It found Skusa disabled under the definition of the policy, approved him for long-term benefits, but then abruptly terminated continued benefits based solely on one of the flimsiest reports this Court has ever seen in the ERISA context." *Id*. at *8.

*Gilmore v. Liberty Life Assurance Company of Boston*, 2014 WL 1652048 (N.D. Cal. April 24, 2014), also addresses this issue. There, the insurance company argued that the plaintiff needed to present "objective medical evidence" supporting her self-reports of pain. *Id*. at *5. The plaintiff argued that the policy's full definition of the proof includes introductory language stating "Proof means evidence in support of a claim for benefits and includes but is not limited to… objective medical evidence." *Id*. at *5. This is the identical policy language present here. *Gilmore* noted that *Boone* and *Doyle* adopted the insurance company's interpretation but concluded that it need not resolve the issue "because even if the Policy's terms do require objective medical evidence, the Ninth Circuit has already held that insurers cannot require objective evidence for conditions for which there is no objective diagnostic tests." *Id*. at *5.

Here, the plain meaning of the Policy does not require objective medical evidence. Second, if the Policy's definition of Proof is held to be ambiguous, then under an abuse of discretion standard, it would be properly construed the way Lincoln chooses to construe it - - as the Court did in *Boone* and *Doyle*. *See, e.g., Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1097-1098 (9th Cir. 2012). But, since review is *de novo*, *contra proferentem* applies and the ambiguous term is interpreted in favor of Berg. *Blankenship v. Liberty Life Assurance Company of Boston*, 486 F.3d 620, 624-625 (9th Cir. 2007).

In conclusion, objective medical evidence is not required by the Policy and Lincoln's arguments implying the contrary are without merit and have been waived because they were not advanced administratively.

## VI.    LINCOLN'S ARGUMENTS ABOUT "TIME CONCURRENT" EVIDENCE ARE WITHOUT MERIT

Lincoln argues that Berg did not submit "time concurrent" evidence. Lincoln's Opening Brief at ¶ 19:17 – 20:5. This argument is without merit. First, Lincoln presented no such rationale administratively; therefore, it waived this argument.

Second, the Policy does not require "time concurrent" evidence.

Third, the law does not require "time concurrent" evidence. Thus, in *Barbu v. Life Insurance Company of North America*, 35 F. Supp. 3d 274, 278 (E.D. N.Y. 2014): defendant "based its decision on an absence of 'time concurrent' evidence of plaintiff's functional limitations, rather than on any affirmative finding that plaintiff's condition improved. However, the Policy contains no requirement that records be 'time concurrent,' nor does it require that particular tests be performed." *See also Rao v. Life Insurance Company of North America*, 100 F. Supp. 3d 210, 221 (N.D. N.Y 2015): the insurance company's denial of benefits "is apparently based on solely on a lack of 'time current' medical evidence and the alleged failure of plaintiff's various physicians to perform certain methods of testing - - requirements now found in the STD policy." Similarly, in *Lyttle v. United of Omaha Life Insurance Company, supra*, 341 F. Supp. 3d at 1085, United unsuccessfully argued that the neuropsychological evaluation by Dr. O'Grady - - which it ordered - - which was done more than a year after the elimination period was irrelevant to Little's cognitive functioning during the elimination period. The court disagreed, explaining that the evidence from Little as supported by his doctor is materially consistent - - during the relevant time Little was on a very high level of Norco which could and according to O'Grady did, impair his cognitive functioning. *Id*. at 1085.

Thus, "time concurrent" evidence is not required by the Policy or logically necessary. Evidence is entitled the weight that deserves. Thus, medical evidence at

one point in time may - - or may not - - be reliable and credible at another point in time.  Here, Dr. Bacon opined that Ms. Berg's condition was permanent.  AR 284.  Lincoln's Dr. Barreto also opined that Berg's condition was permanent.  See AR 292.  Therefore, whether the opinion was a few months before the relevant "time concurrent" period or not has little bearing on its validity.

The cases relied upon by Lincoln do not support its position.  *Tranbarger v. Lincoln Life & Annuity Company of New York*, 68 F. 4th 311 (6th Cir. 2023), turned on Tranbarger's ability to demonstrate complete and continuous disability during the six months following her resignation from employment.  *Id*. at 312.  Nobody disputed that Tranbarger was disabled <u>after</u> the elimination period; however, the question was whether she was disabled during the six-month elimination period following her resignation.  *Id*. at 313.  The Court explained that "even one day of partial work ability during the elimination period is enough to defeat Tranbarger's claim.  *Id.*  Several years after she stopped working an SSA ALJ found Tranbarger disabled under Social Security rules.  The Court held that the disability decisions of the SSA do not bind it in resolving ERISA claims and it did not find the decision persuasive because the evidence does not prove Tranbarger's claim and it had relied upon post-elimination period evidence that does not speak to the timeframe at hand.

Nor does *Autran v. Proctor &Gamble Health and Long Term Disability Plan*, 27 F.4th 405 (6th Cir. 2022), support Lincoln's position.  In *Autran*, "Autran needed to regularly submit objective medical evidence proving his continued total disability." *Id*. at 410.  Autran was sent to two independent medical examinations and both doctors opined that he was at most, partially disabled.  *Id*. at 410.  The plan explicitly required "objective medical evidence".  *Id*. at 412.  The *Autran* defendant also distinguished Autran's favorable Social Security Administration decision because the SSA adhered to the treating physician rule.  *Id*. at 416-417.  However, the SSA abandoned the treating physician rule in 2017, and did not follow it in Berg's case.

---

**PLAINTIFF'S RESPONSE MEMORANDUM TO DEFENDANT LINCOLN'S OPENING BRIEF ON THE ADMINISTRATIVE RECORD - 14 -**

Lincoln also mischaracterizes the evidence on this point, asserting "ALJ hearing occurred on June 9, 2022, well over a year before the relevant time period…" Lincoln's Opening Brief at 19:17-18. The ALJ hearing occurred on June 23, 2023; the request for hearing was dated June 9, 2022. See AR 155.

Finally, Lincoln's demand for "time concurrent" evidence is very much a "do as I say, not as I do" proposition. Lincoln terminated Ms. Berg's benefits effective September 6, 2023, based on an opinion by Dr. Barreto provided in July 2023, which opinion did not take into account the most recent time concurrent evidence available to Lincoln - - Dr. Bacon's answers to the two questionnaires Lincoln sent Dr. Bacon. Apparently, Dr. Barreto's opinion is "time concurrent" even though it is based on months old evidence, and it is used to predict the future - - at least according to Lincoln. In fact, the weakness of Dr. Barreto's opinion is not that it is not "time concurrent," but that Barreto was "sandbagged" - - he did not examine Berg, was not provided with Dr. Bacon's answers to the questionnaires Lincoln sent Dr. Bacon, and Lincoln did not later provide to Dr. Barreto with the evidence of the Social Security Administration Decision.

## VII.    LINCOLN DID NOT REASONABLY CONSIDER BERG'S SSDI DECISION

Lincoln is certainly not bound by the SSDI award as it correctly argues, citing *Jackson v. Metropolitan Life Insurance Company*, 303 F. 3d 884 (8th Cir. 2002). See Lincoln's Opening Brief at 20:4-5. But Lincoln is and was required to provide Berg a "full and fair review." Therefore, Lincoln was required Lincoln to "provide for a review that take into account all comments, documents records, and other information submitted by the claimant relating to the claim…" 29 C.F.R.§ 2560.503-1(h)(2)(iv), and in deciding Berg's administrative appeal, Lincoln was required to provide "an explanation of the basis for disagreeing with or not following… A disability determination regarding the claimant to the plan made by

the Social Security Administration."  29 C.F.R. §2560.503-1(j)(6)(i)(C).

ALJ Rolph found - - and the evidence in the Administrative Record for this claim shows:

∗       "[T]he record relating to the claimant's pain and other symptoms is very compelling."  AR 157.

∗       "The claimant's allegations are consistent with and supported by the medical evidence."  AR 157.

∗       Given Berg's limitations, a vocational expert testified "there are no jobs in the national economy" that she could perform.  AR 160.

Lincoln engages in unsubstantiated speculation about the SSA ALJ's reasoning, contrary to the SSA ALJ's reasoning.  Contrary to Lincoln's Opening Brief, we know exactly what the ALJ thought because he explained his thinking in a written decision.  See Lincoln's Opening Brief at 19:15-16, for Lincoln's speculation; see AR 155-161, for ALJ Rolph's actual reasoning.

Lincoln's factually inaccurate, and cursory consideration of the SSDI decision is not sufficient, persuasive, or credible.  As discussed in Berg's Opening Brief, Lincoln did not share the SSDI opinion with either Dr. Moses-Layno or its vocational reviewer, Mr. Miller or obtain reports from them referencing or disagreeing with the SSDI decision.  Lincoln's only consideration of the SSDI Decision (other than to demand repayment of an overpayment from Ms. Berg) is as follows:

> "We are aware and fully considered the Social Security Administration's (SSA) ruling to approve your Social Security Disability Income benefit beginning September 2021 relative to your disability under their rules beginning September 2021. However, an award of Social Security Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Walmart Inc.'s Group Disability Income Policy.  We also requested and obtained update medical and vocational information and conducted an independent review of this information.  Nevertheless, our determination is based upon updated medical records and different medical and vocational information that would have been considered by the SSA in September 2021."  AR 77-78.

That analysis is plainly <u>factually</u> wrong.  The SSA considered Berg's evidence in <u>June</u>, <u>2023</u>, <u>not</u> in <u>September</u> 2021.  Lincoln claims it had newer information than the SSA - - but there is no proof that it did.  Admittedly, the standards for the SSDI benefit and for the Policy are different, but Lincoln was required to "take into account" Berg's SSDI decision and provide an explanation for disagreeing with it.  It only "went through the motions" and pretended to do so and provided no plausible or factually accurate explanation for its disagreement.

## VIII.  <u>LINCOLN ADMINISTRATIVELY DID NOT RELY UPON THE OPINIONS OF DRS. LIN AND ROJHANI</u>

It is disingenuous for Lincoln to argue <u>now</u> that Dr. Lin's and Dr. Rojhani's reports support its final decision.  See Lincoln's Opening Brief at 2:19-20.  Lincoln obtained Dr. Lin's report on November 1, 2021.  AR 709-716.  Thereafter, Lincoln paid LTD benefits for more than 20 months until September 6, 2023.  Obviously, Dr. Lin did not have access to treatment records that are "time concurrent" for the period in question - - whether Berg can work as of September 6, 2023.  Obviously, Dr. Lin did not have access to Dr. Bacon's questionnaire answers or to the SSA ALJ Rolph's decision.  Lincoln did not reference Dr. Lin's reports in either its July 14, 2023, letter or its November 3, 2023, letter.  Dr. Lin's report does not advance Lincoln's position in this case and Lincoln did not rely upon it to terminate Berg's benefits.

Lincoln obtained Dr. Solomon Rojhani's peer review on December 5, 2022.  AR 498-506.  Lincoln continued to pay Berg's benefits for nine more months thereafter until September 5, 2023.  Lincoln did not reference Dr. Rojhani's report in either its July 14, 2023, termination of benefits letter, AR 270-276, or its November 3, 2023, appeal denial letter. AR 75-81.  Like Dr. Lin, Dr. Rojhani did not have access to "time concurrent" records concerning Berg's treatment or to Dr. Bacon's questionnaire answers or to ALJ Rolph's decision.  Dr. Rojhani's report

also simply does not add anything to Lincoln's case and Lincoln did not rely upon it to terminate Berg's benefits.

## IX.    BERG'S SUBJECTIVE EVIDENCE IS SUFFICIENT PROOF

Lincoln's arguments that Berg's subjective evidence is insufficient proof to support her claim is without merit.  Lincoln's Opening Brief at 19:3 – 20:5.

Lincoln did raise this issue administratively and therefore has not waived it. But Lincoln acknowledges that all of its reviewers "credit Berg's pain complaints." Lincoln's Opening Brief 13:14-15.  Second, the authorities cited by Lincoln do not support its position.  Admittedly, in cases in which the standard of review is for abuse of discretion, and the administrator retains discretion to interpret the plan terms an administrator does not abuse its discretion by requiring objective evidence of an inability to function in the workplace.  *Seleine v. Fluor Corporation Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009); *Maniatty v. Unumprovident Corp*., 218 F. Supp. 2d 500, 504-505 (S.D. N.Y. 2002), but even in an abuse of discretion case whether the plan does not explicitly require such proof, such a requirement may in fact, be unreasonable in the context of a particular case. *Solomon v. Metropolitan Life Insurance Company*, 628 F. Supp. 2d 519, 531 (S.D. N.Y. 2009).  Finally, in a *de novo* review case where there is no requirement for objective medical evidence set forth in the Policy, demanding objective evidence is an improper material modification of the terms of the Policy.  Lincoln "lacks discretion to rewrite the plan." *Canseco v. Construction Laborer's Pension Trust*, 93 F.3d 600, 609 (9th Cir. 1996).

## X.    CONCLUSION

Most of the arguments asserted in Lincoln's Opening Brief were not raised administratively.  Therefore, those rationales have been waived and they are not a proper basis for this Court to uphold Lincoln's decision.  The facts and the law are

contrary to Lincoln's position in this case and therefore, it ignores the law and tries to create new facts.  If Lincoln could defend its decision based on its administrative rationales, it would do so.  Lincoln has effectively waived all of its administrative rationales (except its disagreement with the SSDI award), and is now advancing new rationales, all of which are without merit, and which have been waived because they were not raised administratively.

Lincoln's reviewing doctors' opinions are not credible or persuasive.  See Berg's Motion for Judgment.

Therefore, the Court should grant Plaintiff's Motion for Judgment.

Respectfully submitted this 5th day of November, 2024.

/s/ Robert J. Rosati
ROBERT J. ROSATI

/s/ Mel Crawford
MEL CRAWFORD

*Attorneys for Plaintiff, BARBARA BERG*