Robert J. Rosati, CA SBN #112006
Email:  robert@erisalg.com
6485 N. Palm Ave., Ste. 105
Fresno, CA 93704
Telephone: (559) 478-4119
Facsimile: (559) 478-5939
*Admitted Pro Hac Vice*

Mel Crawford, WSBA #: 22930
Law Office of Mel Crawford
3244 N. E. 103rd St.
Seattle, WA  95125-7821
Email: melcrawford@melcrawfordlaw.com
T:  (206) 694-1614
F:  (206) 905-2342

Attorneys for Plaintiff: *Barbara Berg*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA BERG,<br><br>       Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>       Defendant. | Case No.  2:24-cv-97-SAB<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**<br><br>**Hearing Date:**  December 12, 2024<br>**Time:**  1:30 p.m.<br>**Location:**  Thomas S. Foley<br>U.S. Courthouse<br>920 W. Riverside Ave<br>Spokane, WA 99201<br><br>**Judge:**  Stanley A. Bastian |

///

///

///

///

///

///

///

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

## I.  <u>ARGUMENT</u>

Lincoln's Response to Plaintiff's Motion for Judgment, ECF No. 32 ("Lincoln's Response") mischaracterizes the issues presented, misstates the facts, misconstrues the law, and primarily advances rationales not raised administratively.

1.      Contrary to Lincoln's Response at 2:1-2, this case does not "turn on whether Berg can use her right hand occasionally or not at all."  The questions presented by this case are: (a) whether Berg is disabled under the terms of the Policy; (b) whether the rationales Lincoln advanced administratively are sufficient to uphold its adverse decision; and (c) whether Berg's evidence supporting her claim is more credible and persuasive than Lincoln's evidence adverse to Berg's claim.

2.      Lincoln asserts that Berg must "prove through objective medical evidence that she is unable to perform any occupation." Lincoln Response at 2:3-4. Lincoln now states explicitly what it only previously implied - - that the Policy requires "objective medical evidence."  That is a misrepresentation of the terms of the Policy and a rationale <u>not</u> raised administratively and which therefore has been waived.  See Plaintiff's Response Memorandum to Defendant Lincoln's Opening Brief on the Administrative Record ("Plaintiff's Response") 10:21 – 12:28.

3.      Lincoln asserts that "the unrebutted vocational evidence confirmed multiple occupations Berg can perform with occasional use of her right hand." Lincoln's Response 2:4-6.  This misstates the facts.  Lincoln's vocational evidence is not persuasive or credible, see Point No. 17, in this brief at 6:25 – 7:17, and was not "unrebutted."  In response to the termination of her benefits, Berg submitted the Social Security Administration's Notice of Decision, which includes a summary of the testimony of an independent vocational consultant, Diana Kizer.  See Plaintiff's Motion for Judgment, ECF No. 27 ("Plaintiff's Motion"), especially Facts Nos. 9, 10, 15, 17, 18, 19; see also Plaintiff's Motion at 20:6-14 and Plaintiff's Response at 15:18 – 17:7.  In her appeal email, Berg specifically referenced Diana Kizer, a vocational expert, who "declared that I am unable to work."  See AR 231.  Ms.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

Kizer's opinion is summarized in the Notice of Decision, which is at AR 152-161. See Plaintiff's Motion at 6:13-16 (Fact No. 15), 7:24-26 (Fact No. 19), and 14:23-25. Kizer testified that there are no jobs in the national economy that Berg can perform. AR 160. Of course, Kizer was asked to consider the criteria specified by the Social Security Act, not the criteria specified in the Policy. But Lincoln also did not consider the criteria specified in the Policy: for its appeal review Lincoln used the wrong policy and failed to consider the Policy's "reasonable continuity" requirement. See Berg's Response at 3:1 – 5:20. Second, Mr. Miller's vocational review is not credible or persuasive. See Plaintiff's Motion at 20.

4.    Contrary to Lincoln's assertion, this case does not require that Berg "prove that she cannot use her right hand, not even occasionally, during the weekday." Lincoln's Response at 2:6-7. First, that is not the issue presented by the Policy. As discussed in Plaintiff's Response at 3:1 – 5:20, the Policy directs consideration to the inability to perform with reasonable continuity the material and substantial duties of any occupation - - a much different issue. Second, "occasionally" is an ambiguous term, but for physical exertion <u>vocational purposes</u>, it usually means from very little up to one-third of the time. See, e.g., *Leach v. Kijakazi*, 70 F. 4t 1251, 1258 (4th Cir. 2023). Third, Berg never asserted that she could not use her right hand at all. She explained her right hand always hurts and that if she uses her right hand that causes increased pain. See: Plaintiff's Motion at 3:8-16 (Fact No. 1), 4:5-15 (Fact No. 5), 6:16 – 7:2 (Fact No. 6); see also Berg's treatment records summarized in Plaintiff's Motion at 8:21 – 12:20; and Berg's SSA testimony summarized at 14:12-20.

5.    Contrary to Lincoln's apparent argument that because Berg's examinations were mostly normal other than slightly diminished grip strength in her right hand, that somehow undermines Berg's claim, Lincoln's Response 2:8-9, <u>that</u> does not mean she does <u>not</u> have chronic disabling pain due to CPRS. Normal examinations only prove Berg doesn't have <u>other</u> conditions. "Normal" test results

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

do not prove CRPS or its absence: "no specific diagnostic test is available for CRPS, several tests can be supportive in making the diagnosis, but the <u>most</u> <u>important</u> <u>role</u> <u>of</u> <u>testing</u> <u>is</u> <u>the</u> <u>help</u> <u>rule</u> <u>out</u> <u>other</u> <u>conditions</u>." (emphasis added in *Holmstrom*.) *Holmstrom v. Metropolitan Life Insurance Company*, 615 F. 3d 758, 768-769 (2010), quoting Richard H. Rho, Complex Regional Pain Syndrome, 77 Mayo Clinic Proceedings, 174, 175 (2002).  Pain is subjective and cannot be quantified.  See Plaintiff's Motion at 18:10-27.  Second, administratively, Lincoln never reasoned that basically normal exam findings were inconsistent with a diagnosis of CPRS - - and thus waived this argument.  See Plaintiff's Response at 5:21 – 8:26.

6.    Lincoln asserts "Four independent reviewing physicians . . . uniformly credited Berg's complaints to opine it was reasonable to limit her right-hand usage to 'occasional'." Lincoln Response 2:9-11.  But Lincoln did not rely upon two of those doctors' reports.  See Plaintiff's Response at 17:9 – 18:2; and as to the other two, the Administrative Record shows Lincoln "sandbagged" those doctors (new evidence outside the Administrative Record suggests either ECN sandbagged Dr. Layno-Moses <u>or</u> she ignored the evidence), thus undermining the persuasiveness and validity of their opinions.  See Plaintiff's Motion at 16:20 – 18:9. Lincoln's argument at Lincoln's Response at 21:1-17, that it did not cherry pick the evidence provided to Dr. Layno-Moses is addressed at pages 8:22 – 10:6 of this brief.

7.    Lincoln asserts that "Berg's only evidence is the advocacy from one of her many providers and this evidence contravenes an examination conducted by his own staff." Lincoln Response 11-13.  First, Lincoln's new attack on Dr. Bacon's credibility was not raised administratively and therefore has been waived.  Second, it is factually unsupported.  See Plaintiff's Response at 9:1 – 10:19.  Third, Dr. Bacon's opinion is not Berg's only evidence: she presented two years of treatment records from several medical providers which document basically unrelieved chronic pain despite numerous different treatment modalities.  See Plaintiff's Motion at 8:20 – 12:19.  She also presented the SSA Decision.  See Plaintiff's Motion at

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

14:10 – 15:17.

8. Lincoln asserts that rather than adducing evidence to meet her burden, Berg relies on soundbites from factually distinct cases. Lincoln's Response at 2:14-15. That assertion is hyperbole and mischaracterization. Berg's briefs have stated the issues correctly and summarized the evidence in the Administrative Record and the cases she cites are referenced correctly.

9. Lincoln incorrectly asserts that Berg "mischaracterizes the significance of her SSDI award." Lincoln's Response at 2:15. Berg uses the SSDI award for precisely the reasons it is properly used in an ERISA claim: as additional corroborative evidence of disability, which Lincoln was required by ERISA Regulations to consider and provide an explanation of its basis for disagreeing with but did not. See Plaintiff's Motion at 14:10 – 15:17, and Plaintiff's Response at 15:18 – 17:7.

10. Lincoln's assertion that "Berg has not proven her claim," Lincoln Response at 2:17, 4:4 – 6:12, is unsubstantiated argument contrary to the evidence.

11. Lincoln's efforts to distinguish the cases Berg relies upon in her motion, Lincoln Response 6:13 – 11:6, are without merit. First, contrary to Lincoln's arguments, the Policy does not have "a plain term expressly requiring objective medical evidence like we have in this group policy." Lincoln Response 7:4-5. That is a mischaracterization of the Policy. See Plaintiff's Response at 10:21 – 12:28. Second, Lincoln never raised this argument administratively and therefore waived it. See Plaintiff's Response at 5:21 – 8:26. Third, Berg did not submit an FCE report or other similar evidence; Berg submitted the evidence which Lincoln specifically told her to submit. See Plaintiff's Motion 19:1-12. Lincoln is limited to the rationales it advanced administratively. Therefore, Lincoln cannot properly be heard to argue Berg only submitted the evidence Lincoln asked her for and did not submit evidence it did not ask her to submit.

12. Lincoln attempts to distinguish *Young v. United of Omaha* because

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

there was an IME in *Young.* Lincoln Response 9:1-8 arguing that "Berg had no IME." 9:6. *Young* is cited in Plaintiff's Motion at 13:21-28, for the proposition that the insurer's conclusion that the plaintiff's pain complaints were not corroborated by documentation in the file was directly contrary to the evidence in the record. Here, the evidence in the record shows undisputed, corroborated, unremitting, basically unrelieved chronic pain. Admittedly, unlike *Young* (*see Young, supra*, 165 F. Supp. 3d at 987-988), there was no IME here. But the IME was not the point - - and obviously there was no IME here because <u>Lincoln</u> chose not to obtain one. See Plaintiff's Motion at 16:12-19.

13. Lincoln argues that "Dr. Page believed [Berg] was exaggerating the extent of her impairment." Lincoln Response at 9:7-8. First, that is <u>not</u> accurate. See Plaintiff's Motion at 9:14 – 10:1. Second, any rationale challenging Berg's credibility has been waived: Lincoln never disputed or questioned Berg's credibility administratively; Lincoln never claimed administratively that Berg was exaggerating the magnitude of her pain. Therefore, Lincoln waived any such argument and may not properly present this argument now. See Plaintiff's Response 5:21-8:26; 9:12-26.

14. Lincoln argues - - without citation to any case that "the cases confirm that court should look beyond subjective complaints and demand corroboration from competent medical evidence." Lincoln's Response 9:20 – 10:2. <u>That</u> directly contradicts controlling law. See Plaintiff's Motion 18:10-27. Lincoln reiterates its false assertion that "the plan demands objective medical proof of disability." Lincoln Response 10:2-3. As stated, the Policy does <u>not</u> require objective medical proof of disability, see Plaintiff's Response 10:21 – 12:28, and Lincoln did <u>not</u> base its administrative decisions on any lack of objective medical evidence; see Plaintiff's Response at 5:23 – 8:26, so that is a doubly invalid point. Lincoln's discussion of the cases at Lincoln's Response 10:4 – 11:6, ignore the points for which those cases were cited.

15. Lincoln's discussion of the SSDI Decision at Lincoln's Response 11:7

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

– 17:8, is without merit.  First, none of those rationales was advanced administratively and thus, all have been waived.  See Plaintiff's Response at 5:23 – 8:26; 15:18 – 17:7. Second, the only rationale concerning the SSA award/decision, actually raised administratively by Lincoln is contrary to the facts.  See Plaintiff's Response at 15:18 – 17:7. Third, these new rationales are factually unsupported. Lincoln argues - - incorrectly - - that "it does not appear that the ALJ received any medical records later than 2022." Lincoln's Response 13:19 – 14:1. That is plainly not true.  The ALJ summarized the medical records including "recently some success has been notes (sic) with low-dose Naltrexone (LDN), however (Id.)"  AR 158.  LDN was discussed at an office visit on March 21, 2023, AR 443, and at another visit on April 4, 2023, AR 447, and on April 11, 2023, AR 499, PA-C Jonathan Lippman wrote, "Patient has started LDN, states she experienced "minimal pain" with her initial treatment, her pain is fluctuating at this time.  Patient has had "bouts of little pain," ideally this will improve.  Will continue LDN for the next three months and patient will follow up in three months."  The ALJ reference to "some success" with LDN could only have been from records in March-April, 2023, or later.  Obviously, we do not know if ALJ Rolph's reference to "some success" is to the April 11, 2023, medical note or to a later note.  However, we do know that he had medical records from as late as April 11, 2023, contrary to Lincoln's argument. Lincoln discusses SSA presumptions.  However: it made no such arguments administratively and therefore waived such arguments; and there is no evidence those presumptions played any meaningful role in ALJ Rolph's decision.

16.    Lincoln's arguments about its vocational assessment at Lincoln's Response 16:10 – 17:8, misses the point.  Lincoln never addressed in any of its evaluations - - medical or vocational - - Berg's capacity to work with reasonable continuity, as required by the Policy.  See Plaintiff's Response at 3:1 – 5:20.  Mr. Miller's TSA is unpersuasive and not credible for three reasons.  First, he relies solely upon the report of Dr. Layno-Moses; he did not review any medical records.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

Since Dr. Layno-Moses's report is not persuasive and not credible, because she did not examine Berg and did not review and comment upon the SSDI award, Miller's TSA is also not persuasive or credible. Second, Mr. Miller did not review the SSDI award or comment on Ms. Kizer's vocational opinions. Third, the issue is not Berg's skillset; nobody is questioning Miller's assessment of Berg's skills. The issue is Berg's chronic unremitting pain which is exacerbated by Berg using her right hand. What Mr. Miller should have assessed was Berg's capacity to work with reasonable continuity despite suffering from persistent, sharp, burning pain, like bees stinging 8-9/10 all time, that sometimes radiates up her arm and that is worse with activity and increased with wrist movement such that it flares up after any activity and such that any pressure causes pain. See descriptions of pain in Berg's medical records at Plaintiff's Motion at 8:20 – 12:20. In the SSA hearing, Berg "estimated that she can use her right hand for about 20 minutes before pain begins to become noticeable" and must stop her activity. Sometimes she can return to her activity after about 20 minutes, sometimes not at all." AR 159, quoted in Plaintiff's Motion at 14:12-18. Dr. Layno-Moses does not discuss these facts or reference them. Since Mr. Miller only reviewed Dr. Layno-Moses's report concerning the medical evidence, he was unaware of these facts and did not consider them. Mr. Miller's TSA is weak and not persuasive not because he did not accurately assess Berg's skills. Mr. Miller's TSA is not credible or persuasive because Lincoln chose to provide him with limited, incomplete, and inherently misleading information on which to base his analysis and report.

17.    Lincoln misconstrues Berg's arguments about its decision-making process by raising a "straw man" argument that Berg argues Lincoln failed to give her sufficient information to appeal. Lincoln Response 18:9 – 19:10. Berg discusses Lincoln's communications with her because they demonstrate the rationales Lincoln advanced administratively, not to prove conflict of interest. See Plaintiff's Motion at 18:28 – 19:22.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

18.     Lincoln argues that Dr. Layno-Moses's review was a more updated and complete medical file than the Social Security Administration ALJ possessed.  But that is not correct.  As discussed herein, the ALJ had evidence from at least as late as April 2023.  See this brief at 6:8-24.

19.     Lincoln misconstrues Berg's argument about an IME.  Lincoln's Response 19-20.  Berg's argument is <u>not</u> that Lincoln had a duty to disprove Berg's claim, but that Lincoln's evidence is weak because it chose not to conduct an IME or an FCE.  The Policy authorizes Lincoln to examine Berg, but it chose not to do so.  Berg Motion 16:12-19.  Lincoln chose to rely upon weak evidence.  It never explained administratively why it did so.  Its litigation-only explanations now at Lincoln's Response 19:11 – 20:20, plus "Exhibit A," have been waived and should be disregarded and stricken.  Furthermore, as discussed herein in Point No. 5 of this brief at 3:7-17, "normal examinations" do not prove Berg does or not have CPRS.

20.     Lincoln now offers evidence outside of the Administrative Record that Lincoln "did provide the ALJ decision for review to Dr. Layno-Moses."  Lincoln's Response 21. But, there is no such evidence in the Administrative Record.  Second, the Declaration of Jodi George, ECF Doc. No. 32-2, only states that the ALJ Decision was submitted to ECN, <u>not</u> to Dr. Layno-Moses.  Third, Dr. Layno-Moses's report states, "I reviewed records from 6-17-2020 through 5-11-2023, including . . ."  and then lists a variety of records, <u>not</u> including the SSA Notice of Award. See AR 165-173; 92-95.

## II.     <u>LINCOLN'S NEW EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORD AND ITS THREE-PAGE SUMMARY SHOULD BE STRICKEN</u>

Lincoln supplements its Response with two improper documents:  Exhibit "A", a chart of certain evidence, and Exhibit "B," a declaration of Jodi George.  Both are improper and should be stricken.

Exhibit "A," is an improper attempt to submit a brief in excess of 20 pages without Court approval; it is referenced in Lincoln's Response at 6:7.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

The Declaration of Jodi George is new evidence not in the Administrative Record: <u>nothing</u> in the Administrative Record shows what documents Dr. Layno-Moses received and reviewed <u>other than her two reports</u>, neither of which mentions the SSA Notice of Decision.  See AR 165-173; 92-95.  While summaries of voluminous writings that cannot be conveniently examined in court are proper, F.R.E. Rule 1006, the proponent must make the originals or duplicates available for examination - - but Lincoln has not done so.

Ms. George's declaration does <u>not</u> explain: (1) what records <u>ECN</u> sent to Dr. Layno-Moses; (2) or why this new evidence is not in the Administrative Record and why it is only now being disclosed; and (3) or why Lincoln did not specifically request that Dr. Layno-Moses address the SSA Notice of Award/Decision, if in fact, it sent that Notice to ECN.  Lincoln needs to explain: (1) <u>why</u> this evidence is not <u>in</u> the Administrative Record - - why it was not included or why it was deleted; (2) why it is only being disclosed now; and (3) what other evidence does Lincoln (or ECN) possess <u>not</u> in the Administrative Record concerning Berg's claim - - and why was <u>that</u> evidence not included or was deleted from the Administrative Record?

Finally, this evidence does not change the outcome of the case.  Whether Lincoln sandbagged Dr. Layno-Moses, or ECN did, or whether Dr. Layno-Moses ignored relevant evidence because Lincoln did not ask her to comment on it, or perhaps because ECN did not provide it or because she chose to ignore it, it <u>is</u> <u>certain</u> that Dr. Layno-Moses did not list the SSA Notice as evidence she reviewed or comment on it and <u>that</u> undermines her opinions.  It appears to be Lincoln's position that it did not "sandbag" Dr. Layno-Moses, but instead "sandbagged" Berg and the Court by withholding documents from the Administrative Record.  That does not alter the fact that Berg's appeal was based on two pieces of evidence - - the SSA Decision, which Dr. Layno-Moses <u>never</u> references, and Dr. Bacon's questionnaire answers, which Dr. Layno-Moses summarizes, see AR 94 and 169, although at AR 172 she misconstrues Dr. Bacon's restrictions and limitations,

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**

asserting no R&Ls were recommended … for the timeframes in question. Dr. Bacon listed his R&Ls "as recommended." See AR 150, Questions 5-9 and the second #8, but otherwise, does not discuss or explain <u>why</u> she disagreed with it. Dr. Layno-Moses's opinions are not credible or persuasive because she does not address this key evidence. See Plaintiff's Motion 18:1-9. Ultimately, the fault for <u>that</u> lies with Lincoln - - which should have and could have required and requested that she do so.

### III.    CONCLUSION

The evidence demonstrates that Berg is entitled to the benefits she seeks. Lincoln's briefs in this action repeatedly violate ERISA by improperly asserting rationales that were not raised administratively, which arguments should <u>all</u> be stricken. Second, Lincoln's new rationales are weak, untrue, and unpersuasive. Lincoln's Response, like Lincoln's Opening Brief, presents untenable, unsupported arguments, most of which are unrelated to the rationales it relied upon administratively. If Lincoln could defend its decision based on the rationales it presented administratively, it would do so. Lincoln is <u>now</u> advancing arguments in litigation which it never made administratively because the rationales it advanced administratively are without merit and unsupported by the evidence.

The Court should grant Plaintiff's Motion for Judgment and deny Lincoln's Motion on the Administrative Record.

Respectfully submitted this 21st day of November, 2024.

*/s/ Robert J. Rosati*
ROBERT J. ROSATI

*/s/ Mel Crawford*
MEL CRAWFORD

*Attorneys for Plaintiff,*
BARBARA BERG

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT**