FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 21, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA BERG,<br><br>    Plaintiff,<br><br>    v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>    Defendant. | No. 2:24-CV-00097-SAB<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

On December 12, 2024, the Court held a motion hearing in this matter in Spokane, Washington. Plaintiff was represented by Robert Rosati. Defendant was represented by Kristina Holmstrom.

At the hearing, the Court considered Plaintiff's Motion for Declaratory Judgment, ECF No. 27. This action is brought under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), and asks the Court to review de novo the administrative record regarding Plaintiff's entitlement to benefits.

After reviewing the briefs, administrative record, caselaw, and considering the oral arguments, the Court finds Plaintiff is disabled and cannot perform any occupation as defined by Defendant's policy, which qualifies her for long term benefits. As such, the Court **grants** Plaintiff's motion.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1**

## STANDARD OF REVIEW

ERISA, 29 U.S.C. § 1001 *et seq.*, was "enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations omitted). The Ninth Circuit has "repeatedly stated that ERISA is remedial legislation that should be construed liberally to protect participants in employee benefit plans." *LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015) (citations omitted).

Under Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(1):

> A civil action may be brought—
>
> > (1) by a participant or beneficiary—
> >
> > > (A) for the relief provided for in subsection (c) of this section, or
> > >
> > > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

Every ERISA employee benefit plan shall "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). To start, the claim denial must contain, under 29 C.F.R. § 2560.503–1(g)(1):

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 2**

      (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

      (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

For an adverse determination based on a group health plan, the denial must also contain the internal rule, guideline or protocol followed, or an explanation of the scientific or clinical judgment. *See id.* For an adverse determination based on disability benefits, the denial must contain a discussion of the basis for disagreeing with:

      (i) The views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant;

      (ii) The views of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; and

      (iii) A disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration;

*See id.* After denial, the claimant is entitled to a "full and fair review" from the plan administrator on appeal. 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503–1(h)(4). If the plan administrator denies the appeal, then claimant may seek review in federal court. 29 U.S.C. § 1132(a)(1)(B).

District courts review the administrative record and ERISA benefits claims de novo. *See Collier v. Lincon Life Assurance Co. of Boston*, 53 F.4th 1180, 1182 (9th Cir. 2022). An ERISA review is done through a bench trial on the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 3**

administrative record. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999) (en banc). The administrator's conclusions do not receive deference. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc). However, "the district court must examine only the rationales the plan administrator relied on in denying benefits and cannot adopt new rationales that the claimant had no opportunity to respond to during the administrative process." *Collier*, 53 F.4th at 1182.

The Ninth Circuit disapproves of new arguments made by a plan administrator during litigation, which protects the plaintiff claimant from being "sandbagged" with a new review. *Harlick v. Blue Shield of California*, 686 F.3d 699, 719–21 (9th Cir. 2012); *see also Wolf v. Life Ins. Co. of N. Am.*, 46 F.4th 979, 982 (9th Cir. 2022). But the plaintiff still bears the burden of proof. *See Muniz v. Amec Const. Mgmt.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

Fed. R. Civ. P. 52(a) requires a court issue findings of fact and conclusions of law for an ERISA review. If a district court finds a plan administrator has acted arbitrarily or capricious in denying a claim for benefits, the court can either (1) remand to the plan administrator for a renewed evaluation, or (2) award a retroactive reinstatement of benefits. *See Demer*, 835 F.3d at 907. A retroactive award of benefits must be supported by the administrative record. *See id.*

**SUMMARY OF THE ADMINISTRATIVE RECORD**

This case was filed in U.S. District Court for the Eastern District of Washington on March 27, 2024. Pursuant to ERISA, 29 U.S.C. § 1132(a)(1), Plaintiff claims Defendant wrongfully denied her long-term disability ("LTD") benefits under her Group Disability Income Policy ("the Policy") issued to her as an employee of Walmart Inc. and member of the Walmart Inc. Associates Health and Welfare Plan. She seeks declaratory judgment against Defendant, which would require Defendant to reinstate her LTD benefits under the terms of the Policy for the period under which Plaintiff is entitled such benefits; pre-judgment interest for

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4**

the unpaid benefits; and attorney's fees and costs.

The Policy provides, in relevant part:

A. "Disability" or "Disabled", with respect to Long Term Disability, means: For persons other than truck drivers, pilots, copilots, and crewmembers of an aircraft:
> i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

B. "Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

C. "Own Occupation", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is performed at Walmart, Inc.

D. "Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

Plaintiff was an employee with Walmart from May 2003 to June 28, 2022, and most recently as a team lead. On March 8, 2021, she became disabled in her right hand and forearm after a diagnosis of De Quervain's tenosynovitis of her right radial styloid; complication from surgery on the hand with residual lesions on the ulnar nerve; calcific tendinitis of her forearm; neuralgia/neuritis; idiopathic progressive neuropathy; complex regional pain syndrome/paresthesia; and cervical spine problems in the form of degenerative disc disease.

On August 19, 2021, Plaintiff submitted her claim to Defendant and noted

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5**

she could sit, stand, and walk but was limited on driving and activities that required the use of her right, dominant hand. On November 1, 2021, Defendant obtained a peer review of Plaintiff's records and diagnosis from Dr. Michael Lin, a Board Certified doctor of internal medicine. He indicated Plaintiff should only use her right hand occasionally and lightly.

On November 6, 2021, Defendant approved Plaintiff's claim for LTD benefits, which started on September 6, 2021, following the 26-week elimination period after her injury on March 8, 2021.

On December 5, 2022, Defendant used the services of Dr. Soloman Rojhani, a Board Certified doctor of physical medicine and rehabilitation and pain medicine, to review Plaintiff's records. After reviewing her records, including from the surgery and post-operation therapy and pain management care, he concluded that she consistently reported pain, weakness, and tingling in her right hand but that she could work full time.

On January 12, 2023, Plaintiff sent Defendant an Activities Questionnaire with supporting documents explaining her physical limitations. She noted she can no longer grasp with her right hand or move her wrist without a burning, aching, stiffness, or stinging sensation. This pain worsens throughout the day. She noted that a good day included light housework with her left hand and a nap around 2 p.m. due to tiredness.

On June 16, 2023, Plaintiff's primary care physician Dr. Barry Bacon responded to a questionnaire regarding Plaintiff and provided by Defendant. He reported Plaintiff suffered nerve damage in her right hand and forearm and that he was treating her for the conditions causing her "permanent disability," as listed above. He noted that Plaintiff's description of her limitations and the pain were consistent with his examination and treatment history. She was not to spend more than four hours on her feet in an eight-hour workday. Her disability impacted her ability to lift or grasp with her right hand and forearm, limiting her injured right

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 6**

hand to 20 minutes of use with a 180-minute break to follow. She could not grasp, turn, or twist objects or engage in fine manipulation with her right hand and forearm. Her left hand and forearm were fully operational. Also, she would likely miss more than four days per month at work because of the pain. He described Plaintiff's attempts to treat or mitigate her symptoms, including through pain management medication, physical therapy, creams, and occupational therapy.

On June 19, 2023, Defendant used the services of Dr. William Barreto, a Board Certified doctor of physical medicine and rehabilitation and pain medicine, to review Plaintiff's medical records. His referenced records included those from before April 2022 and did not include Dr. Bacon's questionnaire. He reported Plaintiff had consistently described her pain since the surgery, that the symptoms would be permanent, and that he did not think she was embellishing her description of her pain or limitations. He thought she could return to work full time with restrictions.

On July 5, 2023, Defendant's employee Rebecca Bach, conducted a transferable skills analysis based on Dr. Barreto's records. The review found Plaintiff could perform sedentary office jobs, including work as a customer service representative supervisor or information clerk.

Also on July 5, 2023, the Social Security Administration ("SSA") granted Defendant disability status and declared her disabled as of March 8, 2021, and as defined under the Social Security Act, 20 C.F.R. § 404.1520(g). In his ruling, Administrative Law Judge John Rolph found "claimant's allegations [] consistent with and supported by the medical evidence in the record." Further, the SSA decision stated, "I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors there are no jobs in the national economy that the individual could perform." Finally, in reviewing the findings by Plaintiff's surgeon that her pain

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7**

was unusual, Judge Rolph concluded:

> That procedure took place in March 2021, and while her surgeon found her complaints unusual, the claimant continued to report a burning sensation on the dorsal aspect of her thumb, index, and long finger that got worse with use, 14 weeks later []. Although this provider stated he was unable to identify any objective anatomic abnormalities or any reason that the claimant should not be able to use her hand normally with the longitudinal record as a whole, as well as his own findings of ongoing tenderness and weakness, despite treatment [], I find Dr. Bacon's conclusions persuasive.

On July 14, 2023, Defendant notified Plaintiff by letter that after reviewing her claim and medical information, her LTD benefits would end on September 6, 2023. It based its decision on Dr. Barreto's June 19, 2023, records and Ms. Bach's July 5, 2023, skills analysis. It did not discuss the SSA decision. The letter noted Plaintiff's right to request a review of Defendant's decision, which she exercised on August 25, 2023.

On July 15, 2023, the SSA sent Plaintiff her Notice of Award for the start of her Social Security benefits.

On July 25, 2023, Defendant received notification Plaintiff had received an award of Social Security benefits retroactively. Defendant then sent Plaintiff a demand for repayment of $28,852.85 for what was double covered by Social Security from 2021 to 2023. Plaintiff repaid the amount in full.

On September 8, 2023, Defendant received a records review of Plaintiff's diagnosis and condition from Dr. Annie Layno-Moses, a Board Certified doctor of physical medicine and rehabilitation and pain medicine. She did not address the SSA decision. Her report included a timeline review of Plaintiff's diagnosis and care with Dr. Bacon, including his responses to Defendant's questionnaire on June 16, 2023. Dr. Layno-Moses found:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 8**

Based on the medical records provided, the claimant has complaints of RUE pain, numbness, and tingling that started following her right first dorsal compartment release due to right first dorsal compartment stenosing tenosynovitis on 03/08/2021. She has an MRI of the cervical demonstrating mild to moderate multilevel degenerative disc disease, moderate facet arthropathy of the cervical spine, moderate to severe foraminal stenosis at C3-4, C4-5, C5-6, and C6-7, and thyroglossal duct cyst measuring 1.0 x 1.9 x 2.7 cm. She has normal EMG/NCVS along with an x-ray and MRI of the right forearm. She has been treated with multiple conservative therapies including PT, OT, nerve blocks, steroid injections, and oral pain medications. However, she has persistent pain complaints. Multiple visits noted normal physical exams but was also noted to have decreased grip strength on some visits, however, given the claimant's imaging findings suggestive of cervical pathology, the claimant is impaired. Therefore, restrictions and limitations are indicated.

> Sitting: Unrestricted
> Standing: Frequently
> Walking: Frequently
> Lifting: Occasionally, up to 20 lbs. BUE
> Carrying: Occasionally, up to 20 lbs. BUE
> Pushing: Occasionally, up to 20 lbs. BUE
> Pulling: Occasionally, up to 20 lbs. BUE
> Climbing stairs: Occasionally
> Balancing: Occasionally
> Stooping: Occasionally
> Kneeling: Occasionally
> Crouching: Occasionally
> Crawling: Occasionally
> Reaching: Occasionally, overhead and below waist levels RUE; Unrestricted, to desk level BUE;
> Frequently overhead and below waist levels LUE
> Use lower extremities for foot controls: Unrestricted BLE
> Fine manipulation: Occasionally RUE, Unrestricted LUE
> Simple and firm grasping: Occasionally RUE, Unrestricted LUE

The above recommended restrictions and limitations are indicated from 09/06/2023 to present and ongoing, with reassessment on or around 03/04/2024.

The claimant's abilities are sustainable on a full-time basis.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 9**

Dr. Layno-Moses' questionnaire noted no records of restrictions or limitations from Plaintiff's providers, despite her referencing Dr. Bacon's June 16, 2023, questionnaire indicating Plaintiff should not work more than 20 minutes with her right hand before a 180-minute break, and that she should not be on her feet more than four hours in an eight-hour workday.

On September 12, 2023, Defendant received a vocational memorandum review from Defendant's employee Jason Miller, which assessed jobs Plaintiff could perform with her limitations. It considered Dr. Layno-Moses' report but did not consider the SSA decision. Mr. Miller found Plaintiff could perform occupations including: surveillance system monitor with a wage of $1,384 per month; gate guard at $1,337 per month; or information clerk at $1,307 per month.

On September 18, 2023, Plaintiff sent Defendant Dr. Bacon's reports and the SSA decision, again. In a September 27, 2023, email, she also indicated Dr. Bacon had tried returning Defendant's calls to set up a peer-to-peer review, without success. Defendant then sent more records to Dr. Layno-Moses but the following October 10, 2023, addendum to the report did not change her analysis. It did not include a conversation with Dr. Bacon or the SSA decision.

On November 3, 2023, Defendant denied Plaintiff's appeal of the termination of her LTD benefits. Defendant noted its consideration of the SSA decision:

> It is important to clarify the existence of a medical condition/diagnosis in and of itself does not equate to eligibility for disability benefits. The focus of our assessment was not whether or not a condition exists; but rather whether or not impairment exists that would preclude you from performing the duties of any occupation.
>
> Based on our review, which included independent reviews we conclude the information is insufficient to support evidence of continued impairment.
>
> We are aware and fully considered the Social Security Administration's

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10**

(SSA) ruling to approve your Social Security Disability Income benefit beginning September 2021 relative to your disability under their rules beginning September 2021. However, an award of Social Security Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Walmart Inc's Group Disability Income Policy. We also requested and obtained update medical and vocational information and conducted an independent review of this information. Nevertheless, our determination is based upon updated medical records and different medical and vocational information that would not have been considered by the SSA in September 2021.

Conclusion

We conducted a thorough and independent reviews of your entire acknowledge that you may have continued to experience some symptoms associated with your condition beyond September 5, 2023. However, the information does not contain significant physical exam findings, diagnostic test results or other forms of medical documentation supporting your impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering you unable to perform the duties of your occupation after that date. Having carefully considered all of the information submitted in support of your claim, our position remains that proof of your continued disability in accordance with the Policy provisions after September 5, 2023 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

Defendant relied on the policy definition that required Plaintiff not be able to perform the "material and substantial duties" of "any occupation" with reasonable continuity, concluding that she could hold a job despite her disability.

In the present action, Plaintiff now argues Defendant failed to provide a full and fair review of her claim, as required by ERISA, 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503–1(h)(4), because Defendant did not provide verification of her claim review and that procedure was followed consistently as applied to similarly situated claimants; Defendant did not provide a description of what additional material would be needed to perfect the claim; Defendant did not meaningfully

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11**

consider Plaintiff's appeal and SSA Decision; and Defendant violated ERISA regulations for disability claims reviews. In sum, Plaintiff asserts Defendant's denial of Plaintiff's claim was arbitrary and capricious, an abuse of discretion, and in violation of its own policy.

## FINDINGS OF FACT

Having reviewed the administrative record de novo, the Court makes the following findings of fact, pursuant to Rule 52(a)(1):

1. The Court gives full credit to Plaintiff's treating physician Dr. Bacon and his opinions regarding her disability, restrictions, and limitations. He was the only doctor involved who examined Plaintiff and reviewed all of the records available to him. Through several visits, records of Plaintiff's ongoing pain and treatment of her diagnosed conditions, and his own medical expertise, his opinion is the most qualified in considering Plaintiff's condition and abilities. The Court is not affording Dr. Bacon any special deference as Plaintiff's treating physician; rather, his opinions come well-supported by the medical records and facts provided in the administrative record. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

Specifically, Dr. Bacon noted Plaintiff's description of her limitations and pain remained consistent through his care of her and review of her records following her surgery. He described her as having a "permanent disability," and noted her restrictions and limitations included a maximum of four hours on her feet during an eight-hour workday, a maximum of 20 minutes use of her right hand with a 180-minute break; missing more than four days a month for pain; and a limited ability to grasp or lift with her damaged right hand.

2. The Court gives full credit to the Social Security Administration decision by Judge Rolph, which declared Plaintiff disabled under the Social Security Act and found based on her condition, age, education, and past relevant work, her skills "do not transfer to other occupations" and "there are no jobs in the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 12**

national economy that [Plaintiff] could perform." The restrictions on her right hand severely limited her ability to work in any job, and her allegations of pain and of a disability remained consistent with her medical records and supported by the medical evidence.

The Court finds significant that Plaintiff qualified for SSA benefits in the same months Defendant was evaluating Plaintiff's condition and ultimately denied her LTD benefits under its Policy. Defendant claims to have considered the SSA decision in full, as noted in its November 3, 2023, letter denying Plaintiff's appeal. However, its denial letter fails to adequately explain why it departed from Judge Rolph's assessment of Plaintiff's ability to work full time and simply states the SSA benefits decisions is "not determinative of entitlement to benefits under the specific terms and conditions of [the Policy]." Defendant claims it relied on records made after September 2021, which would not have been considered by Judge Rolph. However, Judge Rolph held the hearing on Plaintiff's disability application on June 23, 2023, and considered an MRI from 2022, which he noted in his SSA decision. This indicates he did consider records after September 2021. Further, Plaintiff's condition did not meaningfully change from September 2021 to Defendant's final rejection of her LTD benefits in November 2023.

The SSA decision is not binding on Defendant's own decision; however, the failure to meaningfully address Judge Rolph's findings "raises questions about whether [Defendant's] adverse benefits determination was the product of a principled and deliberative reasoning process." *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 635 (9th Cir. 2009) (citations omitted).

3.      The Court rejects the opinions set forth in Dr. Layno-Moses' September 8, 2023, report and October 10, 2023, addendum. Despite Defendant having the SSA decision in its possession, Dr. Layno-Moses did not reference Judge Rolph's analysis of Plaintiff's medical records and his final decision finding her disabled. Confusingly, she also states no restrictions and limitations were

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13**

recommended by treating providers, but she referred to Dr. Bacon's records extensively. Dr. Bacon noted restrictions on Plaintiff's use of her right hand and how many hours she could be on her feet during a workday. Further, Dr. Layno-Moses wrote Plaintiff could stand frequently (in conflict with Dr. Bacon's assessment, which the Court has fully credited), and she could use her right hand—her dominant hand—for fine manipulation and simple and firm grasping only occasionally. Yet, this supported her conclusion that Plaintiff could return to work full time.

    4.    The Court also finds significant that none of the doctors or experts hired by Defendant examined Plaintiff. Defendant is not required to conduct its own in-person examination. *See Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1296 (9th Cir. 2010); *see also Nicula v. First UNUM Life Ins. Co.*, 23 Fed. App'x 805, 807 (9th Cir. 2001) ("There is no absolute requirement of an independent medical examination.").

However, none of those doctors or experts Defendant used in Plaintiff's case reviewed all of the medical records available to Defendant. Dr. Layno-Moses did not discuss Judge Rolph's decision and contradicted the findings of Dr. Bacon. Dr. Barreto did not discuss Dr. Bacon's questionnaire, and despite finding that Plaintiff was not embellishing the description of her pain and that her symptoms were permanent, he still concluded she could work full time with a disabled dominant hand. This again calls into question how thoroughly Defendant looked at Plaintiff's benefits determination. *See Montour*, 588 F.3d at 634.

    5.    Finally, the Court finds Defendant's conclusion that Plaintiff did not qualify for LTD benefits under the Policy because she could perform an occupation other than her "own occupation" unsupported by the record.

In addition, Defendant's denial did not provide "adequate notice" or "specific [] reasons" why it denied her claim and did not have an adequate discussion of its basis for disagreeing with the views presented by Plaintiff, the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14**

views of the medical professionals such as Dr. Bacon, and the SSA decision by Judge Rolph, as required by 29 U.S.C. §§ 1133(1) and 2560.503–1(g)(1).

## CONCLUSIONS OF LAW

Based on the Findings of Fact, the Court makes the following conclusions of law, pursuant to Rule 52(a)(1):

1. Plaintiff is "disabled" as defined by the terms in the Policy issued by Defendant. She cannot perform her "own occupation" as team lead at Walmart, nor "the material and substantial duties of any occupation" because she could not be reasonably fitted "by training, education, experience, age, physical and mental capacity" to work any role full time, given her condition.

2. Defendant's decision to deny Plaintiff benefits was arbitrary and capricious. Plaintiff's disabled status and inability to perform any occupation, as defined by the Policy and as supported by the administrative record, entitles her to payment of full retroactive LTD benefits. *See Demer*, 835 F.3d at 907.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Declaratory Judgment, ECF No. 27, is **GRANTED**.

2. The District Court Clerk shall **enter judgment** in favor of Plaintiff and against Defendant.

3. If Plaintiff seeks an award of attorney's fees, the motion shall be filed on or before **February 21, 2025**.

4. The Clerk shall close this file except for filings related to fees and costs.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, to provide copies to counsel, and to **close** the file.

**DATED** this 21st day of January 2025.



Stanley A. Bastian
Chief United States District Judge

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 16**